ONONDAGA GENERAL TERM, November, 1848.   *Pratt, Grid-
ley, and Allen,* Justices.

## MICKLES & BRADLEY *vs.* COLVIN & EARLL.

Where, at the time of delivering promissory notes to a third person, for the benefit
of the payee, the maker declares the delivery to be unconditional, such declara-
tion is a part of the *res gestæ,* and makes the act of delivery absolute.

But where the notes are signed by two persons, one a principal debtor and the
other a surety, such declaration and delivery by the principal debtor is not
enough to entitle the payee to maintain an action, on the notes, against the
surety and endorsers.  If it appears that the notes were signed by the maker,
together with a surety, and endorsed by another person on the express condition
that they were not to take effect until a certain arrangement should be con-
summated, the absolute delivery of the notes, by the maker, is an unlawful
diversion of them from the purpose for which they were made, and endorsed;
and the payee will obtain no title to them unless he is a *bona fide* purchaser
without notice, and for value paid.

If the payee receives such notes either in part payment, or in part security for, a
precedent debt—viz. an existing judgment which has neither been satisfied nor
cancelled—he is not a *bona fide* holder, within the authorities.

Where a person purchases the promissory note of a third person and gives his own
note for the amount, this is a good consideration for the transfer, as between
the parties.  And the purchaser will be considered a *bona fide* holder of the
note purchased if he receives the same without notice of any circumstances
constituting a defence to such note.

The character of a *bona fide* holder attaches when a purchaser of a note receives
the same without notice, and for a valuable consideration.  And no subsequent
notice will affect the character of the paper in his hands.

Where a bill is filed for the  purpose of making a party chargeable with the
amount of a note made by the complainant, which the defendant has transferred
to a third person in fraud of the complainant's rights, the bill should allege
that the note was assigned by the defendant in fraud of the rights of the com-
plainant, so as to vest the title in the assignee; and then claim relief against
the defendant on that state of facts.

If such bill merely alleges that the assignee is a *mala fide* holder of the note, no
relief can be granted thereon, against the fraudulent assignor.

IN EQUITY.   This was an appeal by the defendants from
a decree of the Hon. Daniel Mosely, late vice chancellor of the
seventh circuit.   The facts are sufficiently set forth in the opin-
ion of the court.   The vice chancellor, by his decree, directed
the defendant Earll to deliver up to the complainants the note

in his hands, to be cancelled ; and that Colvin deliver up the two notes in his possession, to be cancelled ; declaring that the complainants were not liable for the payment of either of those notes, either at law or in equity ; directing the injunction which had been issued, restraining the defendants from prosecuting suits at law upon such notes, or either of them, should be made perpetual ; and directing the defendants to pay the costs of the complainants in this suit, and their costs incurred in defending the suit at law.

*J. G. Forbes*, for the appellants.    I. The notes were delivered by Jackson to Outwater without condition or qualification, as declared by Jackson himself, and as understood both by Outwater and Colvin. II. If the notes were received by Outwater as the agent of Colvin, without condition or knowledge of the pretended understanding between Jackson and Mickles, and accepted by Colvin in security of Jackson's portion of the judgment, Colvin would be protected as a bona fide holder, inasmuch as by the acceptance of the notes he postponed his right to enforce the execution against Jackson at least until the first note became due.    To constitute a holder in the usual course of trade, it is sufficient if he parts with some valuable right on the credit of the paper.    The reason why the holder will not be protected where the party receives the paper in the usual course of trade is, that his debt, and the right to enforce it, still remains, and his situation is in no degree changed in that respect.    But when, as the condition of the deposite of the paper, the party binds himself to postpone the collection of his debt, it is such a surrender of a valuable right as will protect him in holding the paper.    If, in the present case, immediately after the notes had been deposited with Outwater, Colvin had undertaken to enforce his execution by a levy on Jackson's property, would not Jackson, upon the whole case as here presented, have the right to require a discharge of the proceedings on the execution, on the ground that Colvin had by a valid agreement, founded on good consideration, bound himself to wait until the security matured ?    In the case of *Stalker* v.

Mickles v. Colvin.

*McDonald,* (6 *Hill,* 98,) a note was deposited in a bank for collection, and the drawer agreed if he would take it from the bank he would turn the other note in security, which was done. The court, in declaring the holder could not be protected as a holder in the course of trade, lay great stress on the fact that nothing was lost by withdrawing the paper; as there was no endorser to be charged, and because there was no understanding or stipulation that the owner of the note so withdrawn would not enforce its payment; that he had a perfect right to demand its immediate payment and enforce it by action. If he had received the paper on such condition the holder would have been protected. In *The Bank of St. Albans* v *Gilliland,* (23 *Wend.* 313,) it is ruled that receiving a note for a precedent debt is receiving it for value, within the law merchant, if taken in satisfaction, and the original debt is cancelled. But otherwise if taken in security, and no agreement to postpone collection. The whole case clearly shows Colvin to be a bona fide holder of these notes, and that even if it should be true that it was understood between Jackson and Mickles that the notes were only to be valid in case all delivered securities and were discharged as stated by Jackson; yet that Colvin received them free from all such conditions, and had no cause to suspect that any such thing existed. III. Jackson fully establishes the fact that a fraudulent connivance took place between Mickles and himself, to hinder and delay the collection of the debt by Colvin, and for this reason Mickles is not entitled to the favorable consideration of a court of equity. The testimony would also authorize the court to infer that it was a part of the connivance to deposite the notes with Outwater, under a pretended condition between themselves, and of which they might avail themselves as future events might dictate. IV. But if the understanding existed between Jackson and Mickles, that the notes were not to be delivered up until all the parties had secured and were released, and Jackson had delivered the notes contrary to that understanding, Mickles would have no right to complain that the notes had been so applied, because his liability is in no degree enlarged or changed by such an application of the notes. This

Mickles *v.* Colvin.

is not the case of a surety asking relief on the ground of a fraudulent diversion of the security by the principal, and by which diversion the liability of the surety has been increased, as in the case of a surety signing or endorsing a note to take up another note on which he is liable, and where such new note has been misapplied in such manner as to render him responsible for both notes. All the cases in the books have reference to the increase of the surety's liability by the improper diversion. (*See The Bank of Rutland* v. *Back*, 5 *Wend.* 66; *The Utica Bank* v. *Ganson*, 10 *Wend.* 314; *Mohawk Bank* v. *Corey*, 1. *Hill*, 513; *Powell* v. *Waters*, 17 *John.* 176; *Bank of Chenango* v. *Hyde*, 4 *Cowen*, 567.) When a note has effected the *substantial* purpose for which it was designed by the parties, an accommodation endorser cannot object that it was not effected in the precise manner contemplated at the time of its creation. (*Wardell* v. *Howell*, 9 *Wend.* 172. 17 *John.* 176. 4 *Cowen*, 567. 5 *Wend.* 66.) V. Earll is a holder of the note as having received it in the usual course of trade according to the law merchant. VI. The complainants have wholly failed in making out the case stated in the bill, and are not entitled to relief, inasmuch as the facts do not substantiate the allegations in the stating part of the bill. The bill alleges, in substance, that the notes were placed in Outwater's hands as an escrow, and subject to certain conditions. The proofs show the contrary to be the fact. The bill alleges that Colvin made proposals to the obligees in the bond that each should give security and all be discharged, and that they assented. The bill establishes no such case. The bill must state the right, title or claim of the plaintiff, with accuracy and clearness. (*Story on Eq. Plead.* §§ 241, 242.)

*Geo. F. Comstock*, for the respondents. I. The proof in the case shows that the notes in controversy were deposited with Peter Outwater, Esq., to take effect when all the parties to the joint bond should have perfected securities for their several shares, and the joint liability had been discharged. II. At all events, the proof clearly establishes that the notes were made

by Jackson and signed by Mickles as security, to take effect only upon the condition above stated. III. The notes are therefore in circulation in fraud of the condition, and in fraud of the rights of the sureties; whether the fact be that Jackson made an unconditional deposite of them with Outwater, or whether he left them upon the condition above stated. In the former case, Jackson used the notes without right. In the latter case, Colvin took them without right. IV. In either case, the notes can be enforced only in the hands of a bona fide holder, who has taken them in the usual course of trade, and paid value for them. V. The defendant Colvin is not, and never was, a *bona fide* holder of either of the notes; because, 1st, he only claims to have taken those notes as collateral to the joint bond against all the parties, which he still holds; 2d, that bond never has been discharged, even as to Jackson; or if it be discharged, it was done after the complainants had countermanded the notes. And their right to countermand cannot be denied upon the supposition made, to wit, that they lent their names to be used upon the above condition. VI. The defendant Earll is not a bona fide holder, in the usual course of trade, of the note prosecuted at law in his name. His interest is no better than that of Colvin. VII. The notes in controversy cannot be enforced against the complainant Bradley separately; because, as his liability is behind that of Mickles, Mickles can be protected only by protecting Bradley also. If Bradley, as endorser, should be compelled to pay the notes, he can look to Mickles, one of the makers. VIII. The release executed by Earll to Colvin, of all liability upon his endorsement, is of itself a discharge of the plaintiffs.

*By the Court*, GRIDLEY, J.   In 1835, William Jackson and seven others purchased a farm of land, known as lot 203 of the Onondaga Salt Springs Reservation, of Aaron Burt, and executed their joint bond and mortgage to Burt for $14,000, the purchase price. Prior to the making the notes which are the subject matter of this suit, the bond and mortgage had been assigned to the defendant Colvin, who had obtained a judgment

on the bond, against the obligors.  It is alleged in the complainants' bill that, after the rendition of this judgment an arrangement was proposed and consummated between Colvin on the one part, and the obligors of the bond and defendants in the judgment on the other, that each obligor should secure his separate share of the judgment; and be discharged from his joint liability for the residue thereof; and that it was an express condition of the said arrangement that *all* of the *said* obligors should give such security; and that unless all did give such security the agreement should be void.  It is then further alleged, that in pursuance of, and in order, on his part, to comply with this agreement, the said Jackson, with Mickles as his surety, *made*, and the complainant Bradley *endorsed*, three notes payable at one, two and three years, at the Onondaga County Bank, for the said Jackson's share of the said judgment, in the aggregate amounting to $2715,17; which notes were deposited with P. Outwater, Esq., Colvin's attorney and agent, as escrows upon the condition aforesaid.  These notes were given in December, 1839; and in July, 1840, the complainant gave notice to Mr. Outwater that the condition had failed, and forbade his delivering the notes to Colvin, and demanded that they should be delivered up to be cancelled.  The bill then goes on to state that Outwater, having been indemnified by Colvin, had delivered up the notes to him, and that on one of them a suit had been commenced in the name of the defendant Earll, but really for Colvin's benefit; who was alleged to be the actual owner of the note.  The bill then prayed that the notes might be delivered up to be cancelled, and, in the meantime, that the defendant should be enjoined from transferring and prosecuting the same.

Colvin, who answered without oath, denied the alleged agreement, and also that the notes were deposited under any such condition, claiming them as absolute owner, except that which had been transferred to Earll.  Earll answered on oath, and denied all fraud, and any notice of the facts set up to avoid the notes, and alleged a *bona fide* purchase of the note before it fell due.

Mickles *v.* Colvin.

Much testimony was given on the subject of the alleged agree-. ment, and on the subject of the delivery of the notes to Outwater. But in our judgment the testimony falls short of establishing either the existence of such an agreement, or that the notes were deposited by Jackson, with Mr. Outwater, upon the condition alleged in the bill. It does not appear that the *proposition* ever ripened into an *agreement*. On the contrary, long before the notes were executed, Wood (if not others of the obligors) had declared his inability to give the requisite security for his share; with which fact Jackson was well acquainted. It is difficult, therefore, to conceive that Jackson could have left the notes with Outwater with the expectation that the arrangement would ever be carried out. And Mr. Outwater testifies that Jackson declared the delivery to be *unconditional*, at the very moment of receiving the notes from his hand. This declaration was a part of the *res gestæ*, and made the act of de-. livery *absolute*.       *

Unfortunately, however, for the defendant Colvin, this was not enough to make him the owner of the notes. The bill, at folio 13, avers that the notes were signed by Mickles and endorsed by Bradley on the express representation and condition that they were not to take effect until the aforesaid arrangement should be consummated by all the parties, and a release given of the joint liability, for all but the amount secured by the notes. And the witness Jackson, at the 8th folio of his testimony, substantially proves that allegation to be true. Now if this *be* true, the absolute delivery of the notes by Jackson, was an unlawful diversion of them from the purpose for which they were made and endorsed ; and Colvin got no title to them, unless he was a bona fide purchaser, without notice, and for value paid. (*See* 9 *Wend.* 170 ; 6 *Hill*, 93.) We do not think that he was a bona fide purchaser, within the authorities. He received the notes either in part payment or in part security for a precedent debt, viz. an existing judgment—which has neither been satisfied nor cancelled. The old security (the judgment) has not been surrendered, nor in any manner affected by the deposit of the notes with Mr. Outwater. (21 *Wend.* 499.)

It is, however, urged by the counsel for the defendants, that there is great reason to believe that the deposit of the notes by Jackson was a fraudulent act, done with a view to prevent the issuing of an execution against the goods in Mickles' store or the filing of a creditor's bill; and ultimately, after the deposit had served its purpose, to insist that the notes were mere escrows, and the sureties not liable on them; and that Mickles was a party to this fraudulent conspiracy. This suggestion may be true. That Mickles had, on a previous occasion, taken of Jackson a fraudulent judgment and assignment to protect the property of the latter against his lawful creditors, is proved by Jackson himself; and his relations with Jackson were so intimate and confidential as to authorize a fair conjecture that he was not ignorant of Jackson's purpose. Yet we think that the evidence is not sufficiently strong to warrant us in finding Mickles guilty of this *particular fraud.* It is a case not free from *suspicion ;* but is not *established* by such proof as to form a safe foundation for a decree. We are of opinion, therefore, that the vice chancellor's decree, as to the two notes still in the possession of Colvin, must be affirmed.

A very different question arises as to the note transferred to Earll, and on which he has brought a suit. The bill charges that Earll is a mere nominal party, Colvin being the beneficial owner of the note; or if not so, that he purchased the note with notice, or took it for a precedent debt, and is not a bona fide holder, and calls for an *answer on oath* on all those points. The answer, *explicitly denies all the charges in the bill,* in relation to the alleged *mala fides* of the transfer and holding of the note, and alleges a consideration in an exchange of notes. It is not denied that this answer is responsive. It is so, upon the authorities. (*See the cases cited in Cowen & Hill's Notes,* 285, 286.) Being responsive, and being uncontradicted, it is conclusive, unless it has stated some fact which is incompatible with the bona fides of the transfer of the note. The fact that seems to have struck the vice chancellor with considerable force, was the consideration of the transfer, viz. the note of Earll payable in six months. It is true that the defendant did not, in his

Mickles *v.* Colvin.

answer, explain how it happened that the exchange was made. But while the case is susceptible of an explanation, consistent with the perfect bona fides of the transaction, we have no right to disregard the *positive allegations* of the answer. Nothing short of the testimony of two witnesses, or what is equal to the testimony of two witnesses, can countervail the effect of these allegations. It is to be borne in mind that the prima facie presumption, arising from the possession of the note, is in favor of the bona fides of the transfer; and that the allegations in the answer were as full and particular as the charges in the bill required them to be, and until disproved, we think they must be taken as true.

Again. Colvin was sworn for the defendant Earll, under an objection, and whether that objection was well taken or not, it was waived on the argument, and the testimony is to be regarded as properly before the court. The exchange of notes is a good consideration between the parties. It has even been decided that when two persons exchange their notes, payable to each other, with the view of raising money on them, the *property* in the notes respectively passes by the *exchange* and *delivery,* so that the subsequent sale of the notes at a discount is not usurious. (*Rice* v. *Mather,* 3 *Wend.* 62.) Colvin then became the *actual owner* of Earll's note, and Earll the actual owner of the note in question. Now were the circumstances such as to render the exchange, for the reason alleged by Colvin, a fair and probable transaction? or rather, does the explanation of Colvin disclose a fact which overthrows the allegations of the answer? It seems to us that the explanation of Colvin not only does not tend to impair the credit of the answer, but, on the contrary, shows that the taking of the note by Earll was a very natural transaction. He was told, and had reason to believe, that on the note he received, which was payable at a bank shortly thereafter, he would be able to receive the money which he was endeavoring to raise; and we do not perceive that he had any ground to suspect Colvin of misstating the facts in relation to the note; nor that the transaction was such as to charge him with notice of the circumstances that constitute the

defence to the note, within the authorities cited from 10 *Com. Law Rep.* 154, and 12 *Id.* 95, 98. We think, therefore, that Earll must be regarded as a bona fide holder of the note in question. That character attached when he received the note without notice, and for a valuable consideration; and no subsequent notice can affect the character of the paper in his hands.

It is said that the release executed by Earll to Colvin, to make him a witness in the progress of this cause, has discharged the other parties to the note, and that such release is available to the complainants and fatal to the defendant Earll in this suit. We are not called on to express an opinion of the effect of proof of this fact under a proper issue in the suit at law; but it is sufficient to say that it is not within the issue presented by the pleadings in this case, and cannot, for that reason alone, be made the ground of a decree against the defendant. (*See* 6 *John.* 543, 559, 565; 1 *John. Ch. Rep.* 117; 16 *Wheat.* 189; 1 *Barbour's Ch. Pr.* 339.)

*Again.* We are asked, (in the event of our finding the transfer to Earll bona fide,) to modify the decree of the vice chancellor, so as to make Colvin chargeable with the amount of the note which he has transferred in fraud of the complainants' rights. A conclusive objection to this relief is that there are no appropriate allegations in the bill to warrant such a decree. The bill is not framed with a double aspect; it positively asserts Earll to be a mala fide holder of the note in question, and does not allege that it was in fraud of the rights of the complainants, assigned to Earll so as to vest the title in him; and thus claim relief against Colvin, founded on that state of facts. Such an allegation we deem indispensable, so long as a party is bound to recover, if at all, according to his *allegations* as well as his *proofs*.

The decree of the vice chancellor must therefore be modified as respects Earll and the note transferred to him; so as to declare him a *bona fide* holder of the note, and dismissing the bill, as to him, for that cause.

This is a joint appeal by both defendants from the entire decree, and therefore no costs are given upon the appeal, to either party. We also think that no costs should be allowed to either party in the court below.

