## Price *vs.* Shipps.

It is no objection to an execution issued by a justice of the peace, that it is made returnable "*within* sixty days from the date."

To constitute a levy on personal property, the officer must assume dominion over the property, having it at the time within his power and subject to immediate seizure.

The plaintiff purchased a horse of A., in good faith, and took possession thereof, without notice that a judgment had been previously recovered against the owner, and an execution issued thereon; subsequently, the defendant, a constable, levied upon the horse, by virtue of the execution, by indorsing the levy on the back of the execution, under instructions from the plaintiff in such execution to *keep the levy secret*, and not let the debtor know it; and the possession of the purchaser was not disturbed, and no notice given to the plaintiff or to the debtor, for near a month, that a levy had been made. *Held* that this was not a valid levy.

*Held also*, that the direction of the creditor to the constable, to keep the levy secret, and not let it be known to the debtor, was virtually a direction to *delay*, and rendered the execution *dormant*, as against the bona fide purchaser of the debtor's property.

This action was brought in a justice's court, to recover the value of a mare, taken from the possession of the plaintiff by the defendant. On the trial, the following facts appeared: the plaintiff bought the mare of one Ashley, a few days prior to the 28th of October, 1850, and on that day gave his note for the price, payable to Ashley or bearer, four months after date. The mare was in the plaintiff's possession, when the note was given, and had been for about three weeks. On the 19th of July previous, one Adams recovered a judgment against Ashley before a justice of the peace, for $26.62 damages and costs, upon which an execution issued the same day, returnable "*within* sixty days from the date." The sum of ten dollars was paid to Adams on the execution the 1st of August, and on the 10th of October the execution was renewed for the balance due. On the execution were endorsements made by the defendant, of a levy on the mare in the possession of the plaintiff, on the 10th of October, and of a sale of her at public sale on the 15th of November. The mare was taken from the plaintiff by the defendant, the 7th or 8th of November, which was the taking complained of. The plaintiff was called and examined by the defendant as a witness,

after which he was examined in his own behalf, and testified that he thought the mare was in his possession the 10th of October. The question was then proposed to him—"Did you know of there being any levy on the mare?" to which the defendant objected, and the objection was sustained. He further testified, "I had a conversation with the defendant about this levy, about the time the mare was taken out of my possession, or since, and perhaps both. The defendant said he had levied on her, and was advised to keep it a secret, or keep it still. I told him I regretted that I had not known it; he said the plaintiff in the execution had requested him to make a levy and keep it still, or keep it secret, and that was the reason he had done so; he assigned that as a reason for not notifying me of the levy; nothing was said to me about this mare by the defendant till the night before he took her, I think; she was in my possession between two and three weeks after I bought her, before the defendant took her." Being cross-examined he testified—"The defendant claimed, or said in the conversation with me, that he had made a levy upon her." Alanson R. Brewer, examined on the part of the plaintiff, testified that he had a conversation with the defendant on the 7th of November. "I asked him, if he had made a levy on the mare, why he did not let Mr. Ashley know it? His answer was—'Mr. Adams requested me not to, because Mr. Ashley had agreed to settle the matter, or pay a part of it, and he did not wish to make any fuss if he settled it.' Defendant told me they had sued him because he had got a little something; he said if he had had his own way, he should not have had this trouble; said if he had not heard to Adams he should not have been in this trouble." The said Ashley testified "that he had a conversation with the defendant about this levy, about the time the mare got back from Albany, or afterwards; he came to me and wanted to know if I was going to settle up that execution. I told him I did not know as he had any execution against me; he said he had; I told him if he had any I would settle it with Adams, I guessed; he then said he had levied on my mare; I told him I had none; told him I had sold her to Price some two or three weeks before, and got my pay for her. I asked him

Price *v.* Shipps.

what kind of a way that was, not to let me know about it; I asked him if such a levy was good; he said he was instructed so to do. I hired her to Price till I sold her to him; there was no claim on her, that I know of. I considered her my property till I sold her; think she was worth $40 at the time defendant took her; after I sold her she went to Albany and back; I think I sold her two days before she started; she was back one day before the defendant took her; think it was thirteen or fourteen days after the sale that the defendant took her." There was no further evidence in regard to a levy, or the publicity thereof. The justice rendered a judgment against the plaintiff, who appealed therefrom to the county court, where it was affirmed, and he then appealed from the judgment of the county court to this court.

*S. R. Williams,* for the plaintiff.

*J. C. Smith,* for the defendant.

*By the Court,* T. R. STRONG, J. It is made a point on the part of the plaintiff, that the execution under which the defendant justified was void, for the reason that it was returnable "*within* sixty days from the date," instead of "sixty days from the date," as prescribed by § 64, sub. 12, of the code; but I think there is no force in the position. Either form allows full sixty days for the return of an execution, and whichever form is used, the officer is not required to wait that period before returning the same. The legal construction of the process is the same, whether the word "within" be inserted or omitted.

The question to the plaintiff as to his knowledge of a levy on the mare, was wholly unnecessary. There was no proof that he had such knowledge before his purchase and the giving of his note for the price; and the evidence subsequently given proved the contrary. It is plain that no injustice was done by sustaining the objection to the question.

The indorsement by the defendant on the execution, of a levy on the mare on the 10th of October, was prima facie evi-

dence of such a levy; and, besides, declarations of the defendant to the effect that a levy was made at that time, forming part of conversations proved by the plaintiff, were in evidence. But it is by no means clear that all this was not overcome by the other evidence in the case, and that it was not proved that what the defendant called a levy was far short of it. The mare was not taken into his custody; the possession of her by the plaintiff was not disturbed; no notice was given to the plaintiff, or to the debtor, or, so far as appears, to any person, that a levy had been made; and what was done on the 10th of October was under instructions by the creditor to make a levy, and keep it still, or keep it secret, and not let the debtor know it, which instructions were followed. For near a month after that day, so far as appears, not an act was done, or a word uttered by the officer, in reference to a levy. To constitute a levy on personal property, the officer must assume dominion over it, having the property at the time within his power and subject to immediate seizure. (*Green* v. *Burke*, 23 *Wend.* 490, *and cases there cited. Camp* v. *Chamberlain*, 5 *Denio*, 198. *Dresser* v. *Ainsworth*, 9 *Barb.* 619.) The dominion over the property in this case by the defendant, cannot, perhaps, properly be said to have been more than a qualified dominion, a dominion which should not extend to doing an act which might apprise any person of its existence. Obedience to the instructions of the creditor, was hardly consistent with absolute dominion over the property.

But assuming that a valid levy was made on the 10th of October, another question in the case is, whether the execution was not dormant as against the claim of the plaintiff, under his purchase. The plaintiff was clearly a *bona fide* purchaser; he had no notice of the levy, and gave his negotiable note for the property, which had not become due at the time of the trial. (*Mickles* v. *Colvin*, 4 *Barb.* 304. *Root* v. *French*, 13 *Wend.* 570. *Williams* v. *Smith*, 2 *Hill*, 301.) A delay of the officer to proceed after his levy, of from two to three weeks only, had occurred at the time of the purchase, and this did not impair the lien of the execution, unless it was occasioned by the direction of the creditor. If it was thus occasioned, the execution was

Price *v.* Shipps.

thereby rendered dormant as to the plaintiff. (*Herkimer County Bank* v. *Brown,* 6 *Hill,* 232. *Knower* v. *Barnard,* 5 *Id.* 378. *Ball* v. *Shell,* 21 *Wend.* 222. *Benjamin* v. *Smith,* 12 *Id.* 404.) The direction of the creditor, as before observed, was to keep the levy secret, and not let it be known to the debtor. Was this virtually a direction to delay? Would proceeding under the execution have been contrary to the spirit of the direction, by necessarily giving publicity to the levy? In my opinion these questions admit only of an affirmative answer. The direction could not have been complied with without delay; it actually produced the delay; and it follows that the plaintiff's title is superior to the claim of the defendant.

The case of *Butler* v. *Maynard,* (11 *Wend.* 548,) relied on by the defendant, is not parallel to the present one. In that case the instruction to the officer was simply not to make his business public; no direction was given not to inform the debtor; an actual levy was made, and two days thereafter exclusive possession taken in pursuance of it, and the delay of two days was fully excused. The instruction did not prevent the officer acquiring absolute dominion over the property, and no delay was in fact produced by it. It is probable the instructions prevented the levy from being made as public as it might otherwise have been, but beyond that it does not appear to have had any effect.

I think the judgment of the county court, and also that of the justice, should be reversed.

Judgment accordingly.

[MONROE GENERAL TERM, December 5, 1853. *Welles, Johnson* and *T. R. Strong,* Justices.]