## DUNDERDALE *a.* SAUVESTRE.

*New York Common Pleas; General Term, July,* 1861.

### EXECUTION.—LEVY TO SECURE PREFERENCE.

If a judgment-creditor, after issuing execution, instructs the sheriff to levy merely for the purpose of securing a preference and to leave the debtor in possession of the property seized, such execution becomes dormant; and a subsequent execution in favor of another creditor, delivered to the sheriff before such instructions are revoked, has a priority of lien.

Appeal from an order at special term, by DALY, J., directing the sheriff to pay the proceeds of a sale of the property of the defendant to the plaintiff, Dunderdale, instead of to Jacot, the appellant.

In December, 1859, the defendant Sauvestre confessed judgment in favor of one Jacot, for $1,000. On May 22, 1860, an execution was duly issued thereon to the sheriff of New York city. Subsequently, but on the same day, at the urgent request of Sauvestre, Jacot's attorney wrote to the sheriff the following note:

"It is the desire of the plaintiff simply to make a levy, so as to claim a preference. There is no need of keeping a man in charge,—I am sure nothing will be removed.

"W. D. CRAFT."

It did not appear whether Jacot knew of or authorized this proceeding of the attorney, or not.

On June 27, 1860, Dunderdale obtained a judgment against Sauvestre for $452, and issued execution to the same sheriff on that day. Immediately upon receiving notice of this fact, Jacot's attorney urged the sheriff to sell at once; but he did not do so until July 14, 1860. The sale produced $254, which was claimed by both Jacot and Dunderdale. Judge Daly, at special term, directed it to be paid to the latter, and from this order Jacot appealed.

*W. D. Craft* for the appellant, Jacot.—I. The sole motive of

the instructions to the sheriff was to avoid the useless expense of keeping a man to take charge of the goods.

II. At the time these instructions were given, Dunderdale was not a judgment-creditor. No fraud upon him was proved or pretended.

III. The sale was made under Jacot's execution, and within sixty days from its issue. It could not have been compelled to be made previously.

IV. There was no request to *defer the sale.* This case is, therefore, essentially different from the cases, Storm *a.* Woods (11 *Johns.*, 110); Kellogg *a.* Griffin (17 *Id.*, 274); Kimball *a.* Munger (2 *Hill*, 364), in which the general rule is laid down. (See Russell *a.* Gibbs, 5 *Cow.*, 390; Levy *a.* Wallis, 4 *Dall.*, 167.)

V. It was not necessary that the sheriff should remove the goods. The levy was complete. (Ray *a.* Harcourt, 19 *Wend.*, 495; Rew *a.* Barber, 3 *Cow.*, 272.)

*Buckingham & Swift* for the respondent, Dunderdale.—The circumstances in this case amount to collusion for delay. (Paget *a.* Perchard, 1 *Esp. N. P.*, 205; Hamilton *a.* Russell, 1 *Cranch*, 310; *Roberts on Frauds*, 549; *Tidd. Pr.*, 919.)

By THE COURT.*—BRADY, J.—The attorney for the plaintiff sent with the execution issued herein, a paper, in which he stated: "It is the desire of the plaintiff to simply make a levy, so as to claim a preference. There is no need of keeping a man in charge. I am sure nothing will be removed." The object of the paper, as appears upon its face, and the effect of it upon the sheriff, was necessarily delay. It was equivalent to saying: "After the levy don't remove the property, and don't sell until some other process is received." This is apparent from the declaration that it was the desire of the creditor simply to make a levy to secure a preference, thus leaving the property in the possession and under the control of the defendant, and relieving the sheriff from the duty of removing it, or exercising any dominion over it. To constitute a levy on personal property, the officer must assume dominion over it, having the property at the time within his power, and subject to imme-

---

* Present, DALY, F.J., BRADY and HILTON, JJ.

diate seizure.   (Green *a.* Burke, 23 *Wend.*, 490, and cases cited; Camp *a.* Chamberlain, 5 *Den.*, 198 ; Dresser *a.* Ainsworth, 9 *Barb.*, 619.)

In this case the dominion, as in the case of Price *a.* Shipps (16 *Barb.*, 585), was a qualified dominion, because the custody of the property was conferred upon the debtor, and he permitted to employ it as he thought proper.   But aside from that view of the levy itself, it is clear that the directions were intended to delay the execution of the process, and it became, therefore, dormant.   (Whipple *a.* Foot, 2 *Johns.*, 418 ; Storm *a.* Woods, 11 *Ib.*, 110 ; Kellogg *a.* Griffin, 17 *Ib.*, 274; Knower *a.* Barnard, 5 *Hill*, 377 ; Price *a.* Shipps, 16 *Barb.*, 585 ; Russell *a.* Gibbs, 5 *Cow.*, 390 ; Benjamin *a.* Smith, 12 *Wend.*, 404.)

Although the application of the rule by which executions are deemed to be dormant depends upon the circumstances of each particular case, and the discussion of the rule in the adjudged cases has thrown around it some confusion, if not obscurity, it is nevertheless well settled, that if the execution be accompanied by instructions, from which the fair inference is that the debtor is to be left in possession of the property levied upon, and the sale thereof delayed until rendered necessary by the pressure of other process, the execution becomes dormant.   It must not be used as a cover.   There must be an absolute intention to collect the judgment in the ordinary legal mode.   Where a levy is made to secure a preference, and the debtor permitted to remain in possession and to exercise control, no such intention can be said to exist.

The order at special term should be affirmed.

Daly, F. J., concurred.

Hilton, J. (dissenting).—I do not concur in the view that the execution in favor of Jacot became dormant because the attorney, at the request of the defendant, and without the knowledge of his client, addressed a note to the sheriff, in substance informing him that there was no need of going to the expense of placing a keeper in charge of the property levied on, as the defendant could be trusted with its safe-keeping, and that he would not remove it.

For such an act of humanity and confidence in favor of a

debtor, I am not prepared to say that the creditor, whose debt and judgment is wholly unimpeached, forfeits all rights acquired by a valid levy under an execution issued by him.

Another, and it seems to me a fatal objection, to holding that the execution of Jacot and the levy thereunder was dormant, is, that it appears the goods have been actually sold under it, and the proceeds now in the hands of the sheriff, which Dunderdale seeks to have paid over to him, have resulted from such levy and sale.

In my opinion, these funds belong to Jacot, and should be paid over to him.

## BUCKNAM *a.* BRETT.

*Supreme Court, First District ; General Term, September,* 1861.

PARTIES.—JOINDER OF PLAINTIFFS.—TRIAL.

In an action for the conversion of personal property, brought by tenants in common, if one of the plaintiffs dies pending suit, the action should be continued by the survivors, without joining the executor of the deceased plaintiff. This was the rule at common law, and it has not been repealed by the Revised Statutes nor by the Code.

*It seems,* that all common-law actions to enforce the rights of joint owners or tenants in common, where one of them has died, must be brought in the name of the survivors only.

A distinct defence, not pleaded, cannot be proved at the trial.

Appeal from a judgment.

This action was commenced by S. Bucknam, S. B. Hume, and E. T. Bucknam, as part-owners of a vessel, to recover damages for its conversion by the defendants. Before the answer was served, E. T. Bucknam died, and his death being suggested on the record, the defendants answered, pleading the non-joinder of the personal representatives of the deceased as a defence. On the same ground they moved at the trial to dismiss the complaint, which motion was denied.