HAGGERTY & NOBLES *against* WILBER & BARNET.

TROTTER & DOUGLASS *against* HENRY.

THE sheriff of *Otsego* made a special return to ten diffe-rent writs of *fieri facias* directed to him. Nine of the ex-ecutions were against *Wilber & Barnet*, and the other against *Henry ;* and a question was raised on the return of them, as to the priority to which they were respectively entitled. In the first four suits, the executions were delivered to the she-riff between the 7th and 15th of *January*, 1817, inclusively, and the others in *July*, *August*, and *November*, 1817. The return stated, that the property out of which the money now in the hands of the sheriff was made, was, except a small quantity of household furniture, transferred by *Barnet & Henry* to *Campbell & Hyslop ;* that *Wilber & Barnet* had been partners, but *Wilber* had withdrawn from the partner-ship, and assigned his interest in it to *Henry*, who was to pay his proportion of the partnership debts. *Campbell & Hy-slop* took possession of the store containing the goods so as-signed to them, and they locked up the store, with most of the goods in it, and kept the key, all which was done before the executions in the four first causes were delivered to the she-riff. The assignment to *Campbell & Hyslop* having been ad-judged void by the Court, the sheriff levied on the property, by virtue of the *four first* executions, by going to the store and seizing some articles lying outside of it, and proclaim-ing that he levied on the store, and the goods in it ; but the store was not broken open, nor entered by the sheriff, nor was any inventory of the property taken. *Wilber & Bar-net* held the store under a lease for years, which was unex-pired. The property so levied on was sold by the sheriff in *November*, 1817, as soon as the decision of the Court as to the validity of the transfer to *Campbell & Hyslop* was known, and the sale was made under all the executions.

A sheriff, in order to levy an execution, or to arrest, may break open a store, ware-house, or barn, not an-nexed to a dwelling-house, or form-ing any part of the *curtilage,* as well as the inner doors of a dwelling-house, trunks, &c.

The goods of the defendant are bound from the time of the delivery of the execution to the sheriff; and any assignment of them by the defendant, af-terwards, is void.

The sheriff, before the re-turn day of the execution, must make an actual levy on the goods, by taking an in-ventory of them. Though an inventory may not be re-quisite in all cases ; yet, to make a good and valid levy, the sheriff must have the goods within his view, and under his power. Mere-ly seizing a few articles outside of a store, or ware-house, and pro-claiming a le-vy on the goods locked up in the store, and not within view, is not a levy ; but the sheriff ought to break open the store, and actually seize the goods, and take an inventory of them.

The question was submitted to the Court, on the returns, without argument.

SPENCER, Ch. J. delivered the opinion of the Court. The first question is, whether there was such a levy under the four first executions, as to entitle the plaintiffs in those cases to be satisfied the amount out of the sales of the store and goods.

There can be no doubt that the sheriff had authority to break open the store, and seize the goods. The privilege which the law allows to a man's habitation, and which precludes the sheriff from entering, unless the outer door be open, either to arrest the party, or to take his goods on execution, does not extend to a store or barn, disconnected from the dwelling house, and forming no part of the *curtilage*. (1 *Sid.* 186. 1 *Keb.* 698. S. C.) In the present case the store was uninhabited. It does not even appear that the defendants had a dwelling-house; and the store itself being a chattel interest, the sheriff had a right, no person being in the actual occupation of it, whether there were goods in it or not, to open it for the purpose of sale ; and he might have delivered possession of it to the purchaser.

The statute altered the common law so far, that a *fi. fa.* binds the goods from the time of the delivery to the sheriff, instead of binding them from the time of the *teste* of the writ; and now, if after the writ is delivered, the defendant makes an assignment of them, the sheriff may take them in execution ; but the statute does not alter the sheriff's duty, in executing the writ. He is bound, whilst it is in force, that is, before the return day, to make an actual levy on the goods, by taking an inventory of them. An inventory is, perhaps, not necessary in all cases ; for it has been held, that a seizure of part of the goods in a house, by virtue of a *fieri facias*, in the name of the whole, is a good seizure of all. The inventory furnishes the means of ascertaining what goods were levied on. It may be safely laid down, that the sheriff must have the goods under his view, and within his power, to constitute a good levy. A proclamation of a levy of goods locked up, and not within the view of the sheriff, is no levy. The authority which the law allows a

sheriff to break open a store not annexed to, or part of a dwelling house, a barn, a ware house, and inner doors of a dwelling house, after he has obtained peaceable admission into the outer door, and trunks, shows that the power is given, in order that the writ may be well served, by breaking open such things. The consequence is, that there was no levy under the first four executions; and those which were executed afterwards must take priority in the order of time in which they were delivered. In *Bliss* v. *Ball*, (9 *Johns. Rep.* 132.) the principles here laid down were substantially recognized and adopted.

*Henry* makes no objection to the levy of these executions on the property or interest which he purchased of *Wilber;* and the Court is not called upon to express any opinion how far forth the entire property could be sold. But it appears that he purchased *Wilber's* interest, subject to the payment of the debts of the firm ; and the goods were seized and sold to satisfy the creditors of *Wilber* and *Barnet*. *Henry* has, therefore, no ground to object to the sales. The store itself, however, stands on different grounds. The levy on this store was sufficient; and the proceeds of the sale of the store must be applied upon the first four executions, in the order of their delivery.