## CAMP *vs.* CHAMBERLAIN.

To constitute a valid levy upon goods under a *fi. fa.* as against strangers to the suit, the officer must take possession of the property by manual acts, or he must declare that a levy is intended which must be acquiesced in by those who are present and interested in the question.

Enough must be done to make the officer a trespasser, if the process were not a justification. *Per* BEARDSLEY, C. J.

Viewing the property by the officer, and his mentally intending to levy, and afterwards making a memorandum to that effect which is not communicated to any one, will not amount to a levy.

Where an actual levy on goods is made under a *fi. fa.* and they are left in the possession of the defendant, who continues to exercise acts of ownership over them; and afterwards a *fi. fa.* in favor of another creditor is delivered to another officer, it is his duty to levy upon the goods, notwithstanding such prior levy, *Per* BEARDSLEY, C. J.

Camp v. Chamberlain.

Where there are several executions against the same defendant, delivered at different times, the one first delivered is entitled to preference, though a levy is first made upon the other.

Two executions against the same debtor, are successively delivered to different officers to execute, the first being levied before the second is delivered; then a third execution against the same debtor is delivered and immediately levied; after that, and before the second is levied the first is withdrawn; the second execution is entitled to a preference over the third, and if the officer in whose hands it is, suffer the avails of the property to be applied on the third, he having information of the withdrawal of the first before a sale on the third, and he then return his execution *nulla bona*, he is liable for a false return. *Per* WHITTLESEY, J.

ERROR to the Monroe common pleas. Camp sued Chamberlain in the court below, in case, for a delinquency as a marshal of the city of Rochester, in relation to an execution on a judgment in favor of the plaintiff, against one Webb, which had been delivered to Chamberlain, as marshal, to execute. The first count of the declaration alleged that the defendant had made the amount of the judgment of the goods of Webb, and had not paid over the money; and the second, that Webb had sufficient goods of which the amount might have been made, but that the defendant neglected to levy the same; and both counts stated that he had returned the execution *nulla bona.* The defendant pleaded not guilty, and a trial was had in March, 1845.

The plaintiff proved a judgment in his favor against Webb, in the mayor's court of the city of Rochester, docketed June 12, 1844, for $146,49 damages and cost, and that a *fi. fa.* thereon was issued and delivered to the defendant, as marshal, to be executed, on the 13th day of July following; and also that the defendant was then informed by a clerk of the plaintiff's attorney, that the execution was good, and that Webb had two stores of goods in Rochester. He also proved that the defendant had returned the execution, *nulla bona.* The sheriff of Monroe county was examined, and testified that on the 15th day of July, two days after the plaintiff's execution was delivered, he as sheriff received an execution against Webb, tested on that day, and returnable in two days thereafter, in favor of Burt and others, for $1908,84; that on the day he received it,

he made a levy on a stock of boots and shoes in the possession of Webb, in a store in Rochester. This execution was produced and upon it was endorsed a return that $1137,97 had been made thereon, which was receipted by the plaintiff's attorney therein. It appeared however that no money had been actually paid, but the goods were received of Webb by the plaintiff, in the last mentioned execution, at cost prices, which were 25 per cent. above what they would have sold for on execution. It was proved that on the 20th June, 1844, an execution against Webb, in favor of H. W. Howes, for $835,40, returnable in 60 days, was left at the sheriff's office, and that it was withdrawn by the plaintiff's attorney therein, on the 17th day of July following. It appeared that the defendant in this suit called at the sheriff's office on the 13th of July, and was informed that Webb's property had been levied on under the execution in favor of Howes.

The plaintiff having rested, the defendant examined Smith, the under-sheriff of Monroe county, who stated that on the 20th of June, 1844, he levied the execution in favor of Howes, on the boots and shoes in Webb's store ; but on his cross-examination it appeared that all he had done was to call at the store of Webb with the execution. He did not remove any of the goods or take an inventory. Webb was left in possession as before ; and when Smith shortly afterwards left Rochester for a few weeks, he made a memorandum of the levy, which he annexed to, or placed within the execution. It was admitted that the value of the goods in the store was equal to the amount of the execution in favor of Howes.

The plaintiff proved that shortly before the delivery of his execution to the defendant, Webb was in the possession of the goods in his store, selling and offering to sell them. He offered further to prove, that on the 20th day of July, his attorney informed the defendant that nothing had been done under the execution of Howes and that it had been withdrawn, and that he requested the defendant to assert his claim under the plaintiff's execution upon the goods which had been levied on, under the execution of Howes, those goods being then boxed up, and in a

store-house in Rochester.   The defendant's counsel objected to this evidence and it was excluded, and the plaintiff excepted

The court decided that the levy on the execution in favor of Howes was valid and effectual as against the plaintiff; that the goods after such levy, were in the custody of the law, and that the defendant was not bound to levy on them, and that the defendant's return was justifiable; and they directed the jury to find a verdict for the defendant.   The plaintiff excepted. Verdict and judgment for the defendant.

*E. P. Smith & E. D. Smith,* for the plaintiff in error.

*M. S. Newton & O. Hastings,* for the defendant in error.

*By the Court,* BEARDSLEY, Ch. J.   The writ of *fi. fa.* in favor of the plaintiff and against Webb, was delivered to the defendant on the *thirteenth* of July, 1844, he then being marshal of the city of Rochester.   No levy was made under this writ, by the defendant, at any time, and ultimately he made return that he could find no goods or chattels, &c. whereof to make the amount specified in said execution, or any part thereof, and for making this return, which is alleged to be false, the present action was brought.

When the writ was delivered to the defendant he was told that it was good, as Webb, the defendant therein, had two stores of merchandise in Rochester.   The evidence shows he had one store of boots and shoes, in Rochester, worth, as is admitted, some five times the amount of said execution : that he was in possession as owner of these goods, and was offering them for sale in the ordinary way of retail dealers in such articles.   There is nothing in the evidence to show that he was not such owner, or to prevent the seizure and sale of these goods on this execution, unless the other two writs of *fi. fa.* against Webb, mentioned in the bill of exceptions, or one of them, had that effect.

1. One of these writs, that in favor of Burt and others, was received by the sheriff of Monroe on the *fifteenth* of said July

two days after the plaintiff's execution had been placed in the hands of the defendant. It is entirely clear that if the defendant had done his duty, by a prompt service of the execution in his hands, the one subsequently delivered to the sheriff, could not have been in the way of making the amount due to the plaintiff. The defendant cannot set up this execution of the *fifteenth* of July, or any thing done upon it, to justify or excuse the return made by him.

2. The other of said two executions was in favor of one Howes, and was left at the sheriff's office on the *twentieth* of June preceding the delivery of the plaintiff's execution to the defendant. If any thing was shown on the trial to justify the return made by the defendant, it must be this writ in favor of Howes, or something done under its authority. But no levy had been made by virtue of this execution before the *thirteenth* of July, nor, indeed, was it levied at any time, and on the *seventeenth* of said July it was withdrawn from the hands of the sheriff.

The under-sheriff who held this execution in favor of Howes, testified in a general way, on his direct examination, that he levied it on the boots and shoes in Webb's store, but on cross-examination he showed that no levy had in fact been made by him. He called at the store with the execution, but it does not appear that he mentioned it to Webb or any one else. No actual seizure of the goods was made, nor was any right to seize them asserted by act or word. No inventory was made or goods removed, and Webb was left in full and undisturbed possession. It is not stated that the goods were even seen by the officer, although it is probable that some or all of them were under his eye. All he seems to have done was to walk into the store and subsequently make "a memorandum of the levy which he annexed to or placed within the execution."

Now, taking all this to be true, it does not amount to a levy. In order to constitute a valid levy, as to third persons, the goods must not only be within the view of the officer, but must be subjected to his control. He "must take actual possession," which, although the goods are present, can only be done by

manual acts, or by an oral assertion that a levy is intended
and which is acquiesced in by those who are present and inter-
ested in the question.    A levy cannot rest in a mere undivulged
intention to seize property.    Something more is required : there
must be possessory acts to indicate a levy, or it must be asserted
by word of mouth, so that what is thus done by the officer, if
not justified by the process in his hands, will make him a tres-
passer.    (*Haggerty* v. *Wilber*, 16 *John.* 287; *Beekman* v.
*Lansing*, 3 *Wend.* 446; *Butler* v. *Maynard*, 11 *id.* 548; *Wester-
velt* v. *Pinckney*, 14 *id.* 123; *Ray* v. *Harcourt*, 19 *id.* 497;
*Connah* v. *Hale*, 23 *id.* 466 *to* 470; *Green* v. *Burke*, *id.* 492
*to* 496; *Watson on Sheriff*, 172, 191; *Eastman* v. *Eveleth*, 4
*Met.* 146.)

   Even if an actual levy had been made on these boots and
shoes, under the Howes execution, still the defendant should
have made a levy on the same goods when the plaintiff's execu-
tion was received by him.    The goods were then in the actual
possession of Webb, who was disposing of them as owner in the
ordinary way of a retail dealer, and were therefore *prima facie*
liable to the execution in the defendant's hands.    (*Lovich* v.
*Crowder*, 8 *Barn. & Cres.* 132; *Frost* v. *Dougal*, 1 *Day*,
128; *Williams* v. *Lowndes*, 1 *Hall*, 579, 595.)    By omitting
to make a levy and returning *nulla bona*, &c. the defendant
took upon himself the burden of showing that these goods were
not liable to the execution of the plaintiff, and deprived him of
the opportunity to indemnify the officer and thus require a sale
to be made.    But in this case the Howes execution was ulti-
mately withdrawn, and therefore turns out not to have been
any obstacle in the way of enforcing the plaintiff's execution.
In no event can an officer be seriously incommoded by making
a levy on goods in the possession and use of the person against
whom the execution issues.    For the security of the officer he
may call a jury, and if they find that the goods are not subject
to the levy, this will justify a return of *nulla bona*, unless an
ample indemnity is offered.    Or, application may be made to
the court, which will take care and protect the officer in the
faithful discharge of his duty, by requiring the real parties in

interest to litigate the matter at their own expense. But it is quite unnecessary to discuss what should have been done if the Howes execution had been levied, for no such levy was made.

Nothing is shown, in this case, to justify the return made by the defendant. He could have found goods and chattels, whereof to make the required amount, and might have seized and sold them for that purpose. He was not to take the word of the under-sheriff that he had previously levied on these goods, when in truth no such levy had been made. The fact that the goods were then in the custody of the law, upon a previous levy, might have justified this return; but the mere assertion of the under-sheriff, which turns out not to have been true, amounts to nothing. As far as appears by this bill of exceptions the return of the defendant is wholly unsupported by the facts of the case; the defendant might have collected the execution, and having, by his own neglect, failed to do so, he is liable to the plaintiff for all damages sustained. The court below erred in holding that a valid levy had been made on the Howes execution, and that it was not the defendant's duty to levy on these goods as they were in the custody of the law, and therefore the return made was justified.

The judgment should be reversed and a venire de novo awarded.

WHITTLESEY, J. In this case it does not appear to me to be material whether there was or was not a sufficient legal levy made by the sheriff on the execution delivered to him on the 20th day of June, 1844. If there were no levy, the defendant could not be justified in refraining from making a levy, the goods remaining in the hands of the judgment debtor. If there were a legal levy, the goods would be in the possession of the sheriff and could not be taken by the marshal; or in other words, in such case they would be in the custody of the law the original levy having had that effect, and would be beyond the reach of seizure by the marshal. (*Payne* v. *Drewe*, 4 *East*, 523; *Hotchkiss* v. *McVickar*, 12 *John. Rep.* 403; *Show.* 173;

*Willes,* 136 ; 1 *Cowen's Tr.* 461.)   In case of a sufficient levy by the sheriff, it appears that the amount of the execution upon which such first levy was made was sufficient to exhaust the value of the goods levied upon.   There would be no remaining interest beyond that out of which the execution delivered to the marshal could be satisfied.   As the case would then stand, the marshal would be justified in abstaining from interference with the property after he had been informed by the sheriff that it had been levied upon by him under a prior execution of sufficient amount to exhaust the property.

It is not material to determine upon the sufficiency of the levy under the first execution delivered to the sheriff, because that execution was withdrawn on the 17th of July, by which of course the lien of the levy, if any, was gone.   The execution in this cause was delivered to the marshal on the 13th of July, and the second execution was delivered to the sheriff on the 15th of July.   Executions bind goods from the time of delivery to the officer, except in case of *bona fide* purchasers.   A levy indeed was made under the second execution delivered to the sheriff, and none under the execution delivered to the defendant; but notwithstanding this, the last mentioned execution had the preference, provided an actual levy was made upon it before there was a sale under the other execution.   This is a provision of the revised statutes made to disentangle some of the legal niceties arising out of previous decisions.   (2 *R. S.* 366, § 14.)   As the execution to the sheriff in favor of Burt and others was delivered on the 15th of July, and as there must regularly be at least six days' notice of sale, there could have been no legal sale before the 21st of July.   The case does not inform us when the sale under this execution was made, or whether there was any ; but we see that none could have taken place prior to the 21st of July.   If then the marshal had made a levy on the execution in this cause before that day, such execution would have had a priority over the other by the statutory provision above referred to.   The plaintiff offered to prove that on the 20th of July his attorney informed the defendant (the marshal) that the Howes execution had been withdrawn,

and required him to assert his claim by virtue of the execution in this cause. The testimony was rejected by the court, while it seems to me it was admissible, as it pointed out a mode of . reaching the property as against the other execution. So that in this aspect of the case, even if there was a levy by the first execution, the judgment should be reversed.

Judgment reversed.