Mullin, J.
The jury having found a verdict for the defendant, they must be deemed to have found the following facts as established by the evidence.
1. That the defendant levied on the goods in the plaintiffs’ store on the 24th August, 1857, by virtue of the several, executions then in his hands, of which levy thé plaintiffs had notice, and that such levy was endorsed on the executions on the same day.
2, That the acts done by the defendant in making the *484 levy were as follows: On the 24th of August he went to the plaintiffs’ store, and into the rooms where the goods of the plaintiffs’ were; saw them and exhibited to one of the plaintiffs the executions, and told him that he had levied on the said goods by virtue thereof.
3. That when the arrangement was entered into, that the defendant should take the check and notes in full of the executions, it was understood that the levy should continue in force, and that the inducement to such arrangement was to release the goods of Nelson Both from the levy made by the sheriff of Oneida county; and that such check and notes were not taken in payment of said executions.
4. That John Both refused to point out to the defendants deputy the goods purchased by him after the levy and before the 24th October; and that the defendant, having no inventory, could not distinguish the goods levied on from the new goods purchased and put into the store.
5. That no goods were purchased after the 24th October which were taken by the defendant.
The only legal questions presented by the record for our consideration are:
1; Whether the acts of the defendant constitute a valid levy on the property of the plaintiffs.
2. Whether the charge to the jury that they might regard the levy of the 24th August as continued and covering the goods purchased subsequent thereto, and during the life of the executions, was erroneous.
3. Whether the court erred in charging the jury, that if they believed John Both had knowingly testified falsely in reference to any fact, he was not entitled to be believed in reference to any other fact testified to by him.
(1.) Was there a valid levy? The acts necessary to constitute a valid levy on personal property ought not at this day to be in doubt. The question has been so often before the courts, and the rules laid down at a very early day have been so uniformly adhered to, that there would seem to be *485 no room for controversy or misunderstanding on the subject.
To constitute a valid levy, according to the court, the officer must enter on the premises where the goods are, and take possession of them, if that be practicable; if not, then he must openly and unequivocally assert his title to them by virtue of his executions. (Haggerty v. Wilber, 16 John. 287; Beekman v. Lansing, 3 Wend. 446; Westervelt v. Pinckney, 14 id. 123; Green v. Burke, 23 id. 490; Camp v. Chamberlain, 5 Den. 198; Barker v. Binninger, 14 N. Y. 270.) It is proper, but not necessary, that the sheriff should make an inventory of the property.
It is not essential to the validity of the levy that he take/ actual possession of the goods, or that he remove them from the custody of the debtor, (Barker v. Binninger, cited supra; Ray v. Harcourt, 19 Wend. 495; Van Wyck v. Pine, 2 Hill, 666.)
Indeed, the test of a valid levy is whether enough has been done to subject the officer to an action of trespass, but for the protection of the execution. (See 3 Wend. 446; 23 Wend, and 5 Den. 198, cited supra.)
In this case the defendant went to the plaintiffs’ store, saw the goods, asserted his right to them by virtue of his levy, in the hearing of one of the plaintiffs, and subsequently the fact that a levy had been made was endorsed on the- executions. This brings the case precisely within the cases cited. The defendant did all that is required of an officer to do to perfect a lien on the debtor’s goods. In Copley v. Rose (2 Coms. 115), it was held by this court that the defendants saying that he had levied on the property of the plaintiff, showing the execution by virtue of which he acted, and insisting on the levy, was sufficient evidence that the defendant had exercised such dominion over the property as would make him a trespasser. By whatever standard we test the acts of the defendants, it seems to me that enough was done to constitute a valid levy on the goods.
*486 (2.) As to the levy on the goods purchased and put into the store between the 24th of August and the 26th October. The learned judge told the jury that they might regard the levy of the 24th August as continued, and covering the goods purchased subsequent to the levy and during the life of the executions; such goods being in the same place, of the same general description as those levied upon, and being purchased to supply the place of goods sold by the debtor after the levy or making additions to the stock. The first blanch of this instruction is not very clear, but taking the whole proposition together it would seem that the learned judge intended to say to the jury that inasmuch as the plaintiffs had sold part of the goods which had been levied upon, and other goods of the same general description had been purchased and put in the places from which the other goods had been taken, such substituted goods were liable on the execution, the plaintiffs' neglecting, after request, to designate the goods on which the levy was made. The substituted goods became liable because the plaintiffs, having voluntarily mingled goods not liable to be sold with those that were liable, they could not maintain an action against the officer for selling such substituted goods. To permit an action to be maintained under such circumstances would be a fraud upon both the officer and the party whose process he holds. (Hart v. Ten Eyck, 2 Johns. Ch. R. 62, 108; Frost v. Willard, 9 Barb. 440.)
The charge, if intended, as I have no doubt it was, to convey the idea suggested was right. But if there was room for misapprehension as to the meaning of the judge, it was the duty of counsel to call for such qualification or explanation as would relieve the minds of the jury from any doubt in regard to it.
(3.) As to the charge that if the jury believed that John Roth had knowingly sworn falsely on the trial, he was not entitled to be believed in reference to any fact testified to *487 by him, The learned justice had reference, in this branch of his charge, to certain evidence which had been given on the trial, a brief statement of which is necessary to a cor-rest understanding of the clause under consideration. Roth had sworn that he did not see the defendant at his store on the day of the levy; that the defendant did not show him the executions, nor claim to have levied; that on the evening of the levy there was no endorsement of the levy-on the back of the executions, nor of the time they were received; that the sheriff accepted the check and notes in full of the executions, and did not claim to retain his levy; that he did not advise with Carr at the sale as to the price to be paid for goods. He denied that he said anything to Moore, a witness on the part of the defendant, about going away and not testifying; or that he had made him an offer of clothes, or any thing else, if he would do so; or that he had employed one Perry to see the witness Moore. In relation to all these matters, together with several others, the witúess was contradicted by at least one, and, as to some of them, by two witnesses. And as to employing Perry to see Moore, he admitted it, in the course of his examination. It was to these contradictions the learned judge referred when he told the jury that if they found he had sworn knowingly false he was not entitled to belief in relation to any fact sworn to by him. Most, if not all, the matters as to' which the witness was contradicted were material to the issues then being tried, and as to them deliberate false swearing was perjury. The charge, therefore, was that if the jury believed that John Roth committed wilful and corrupt perjury on that trial he was not entitled to credit as to any fact sworn to by him. It is not claimed that as to many of these material facts he was cotroborated as to all matters resting on his own oath. The jury were required to ascertain the amount of-credit to which the witness was entitled; and it was the province of the judge to give them such rules as would *488 aid them in arriving at a correct conclusion on that subject. - The extent of credit to which the witness was entitled was submitted to the jury, whose province it was to pass upon it.
The case was properly disposed of and the judgment should therefore be affirmed.
Selden, J.
The facts testified to by the sheriff were such as would,have justified the jury in finding'that a levy was ' made upon the goods. He says: “ I went to the plaintiffs’ store, found James C. Both there; he was up stairs; I looked the goods over, up stairs and down. Very soon John Both came in; I showed him the executions; he said I need not levy them for they would be promptly paid; I asked him if he could pay them then; he said he could not; I told him I could hold the levy but would give him a little- time to pay.” The last remark of the sheriff, made in answer to the request not to levy, was equivalent to saying “I levy on the goods, but will not enforce the levy by an immediate sale;” and must have been so understood by the parties. The goods being present, and within the power of the sheriff, these circumstances constituted such an exercise of dominion over them as amounted to a levy, at least as against the defendants in the execution. (Green v. Burke, 23 Wend. 490; Baker v. Binninger, 4 Kern. 270.) The judge, therefore, properly refused to instruct the jury that the facts testified to were not sufficient to constitute a valid levy. The instruction asked for could only have been given in case there was no evidence to justify the jury in finding a levy.
The next question arises on the exception to that part of the charge in which the judge instructed the jury that if there was a sufficient levy made on the 24th of August, and the executions were not satisfied, they might regard the levy as continued and covering the goods purchased subsequent to the levy and during the life of the executions. If *489 a levy upon the goods purchased after the 24th of August, and prior to the return day of the executions, was necessary to justify the sale of the goods by the sheriff after the return day, I should be disposed to regard the exception as well taken. I am at a lo.ss to discover upon what principle a levy upon goods which the defendant possessed at the time of the levy, can ,operate, constructively, as a levy upon goods subsequently acquired by the defendant, which were never seen by, or within the power of, the levying officer, during the life of the executions. But, I am of the opinion that no actual levy was necessary to justify the defendant in seizing and selling the goods, after the retui^p day of the executions; As against the defendant in the judgments, the lien of the executions attached to all the goods held by such defendant, within the jurisdiction of the sheriff during the life of the executions, without a levy. At common law, the writ of fieri facias bound the goods of the debtor from the time when the writ was tested, which often preceded by a whole vacation the , time of its delivery to the sheriff. (Skin. 257; 7 T. R. 23, note (b.); Ray v. Birdseye, 5 Den. 624-5; Hotchkiss v. McVickar, 12 John. 406.) This effect given to the writ by relation, often operated very unjustly, especially as against bona fide purchasers; and to prevent that evil it Was declared, by the statute of frauds, (29 Car. 2, ch. 3, § 16,) that goods should be bound only from the time when the writ should be delivered to the sheriff to be executed. (1 Saund. 219 e., note i.) That statute was early re-enacted in this State (1 B. L. 501, § 6); and, by the revised statutes of 1830, the protection of bona fide purchasers was further extended to the time of actual levy.' (2 B. S. 365, §§ 13, 17.) These provisions are continued in force, and are applicable to executions against property under the code of procedure. (Code, §§ 286, 289, 291.) The goods-of the defendant in an execution, therefore, as against him, are “ bound from the time of the delivery of the execution to the sheriff to be executed ” *490 (2 R. S. 365, § 13); and the reason upon which this rule is founded must extend the lien to all goods acquired by the defendant, within the jurisdiction of the sheriff, during the life of the execution. (Ray v. Birdseye, 5 Den. 619.) This.lien is created by law for the benefit and security of the plaintiff, and cannot be defeated by any act of the defendant short of a sale to a bona fide purchaser; and, in my opinion, it is not lost by the neglect of the sheriff to levy upon or to take the goods into his. custody during the life of the execution, but may be afterwards enforced by the sheriff, without such prior -levy. There is nothing inconsistent with this position in the case of Hotchkiss v. McVickar (supra); and if there be, that case cannot be reconciled with the later decision in Lambert v. Paulding (19 John. 311.) In this case a sloop had been removed by the defendant in an execution frdm the city and county of New York to the county of Westchester, after the delivery of the execution to the sheriff of New York, and before any levy. The next day after the removal, the sheriff of Westchester levied upon the sloop, by virtue of an execution in favor of another plaintiff against the same defendant; and having afterwards sold her, he was ordered, on motion made in behalf of the plaintiffs in the first execution,' to pay the proceeds of the sale to them—such proceeds being less than the amount of their execution. In deciding that case, the court say: “ The delivery of th e fieri facias to the sheriff of the city and county of New York bound the goods of the defendant then in his bailiwick, and the plaintiffs in that execution cannot be deprived of the lien on the sloop, which was then lying in New York; by the act of the defendant in removing the vessel into another county. He would be liable to an action at the suit of the sheriff for so removing the property.”* • From this it will be seen,, that by the delivery of an execution to a sheriff, without" actual levy, he acquires a special property in the goods-of the defendant *491 sufficient to sustain an action against the general owner for their removal. That special property the law creates, not for the benefit of the sheriff, but for the benefit of the plaintiff in 'the execution; and the- object for which it is enacted will not allow it to b.e lost by the sheriff’s negligence. As the lien could be enforced only through the action of the sheriff, he had, I think, a right, by virtue of it, as against the defendant, to seize and sell after the expiration of the execution any property upon which such lien may have attached, although no previous actual levy had been made. The death of the defendant after the issuing of an execution and before a levy" does not prevent the sheriff from seizing and selling the goods of the defendant after his death, “for by the execution awarded the goods are bound.” (Parkes v. Mosse, Cro. Eliz. 181.) If the goods are bound after the death of the defendant, and after removal from the county without levy (Lambert v. Paulding, supra), they must be equally bound after the return day of the writ. The spirit- of the rule which declares execution to be the life of the law (Bacon’s Abr. Execution, A.), and which creates the lien without a levy, requires the continuance of such lien after the return day, so long as the rights of purchasers, or of other creditors, do not intervene. It is the duty of the defendant to satisfy the execution as well after the return day as before, and no wrong can be done to him by continuing the lien which has once attached Upon his goods, until he makes such satisfaction.
But whether the foregoing views are correct or not, the charge upon the point in question may be sustained on the ground that there was a confusion of goods, produced by the acts of the plaintiffs, which rendered it difficult, if not impossible, for the sheriff to distinguish between those levied upon and those which had been subsequently introduced. The plaintiffs refused to separate them, and upon well-established principles, the sheriff, under such circumstances, was-justified in taking the whole. (Hart v. Ten *492 Eyck, 2 John. Ch. 62, 108; Popham, 38, pl. 2; 2 Kent’s Com. 364.) This ground of defence was not presented by the charge', so far as it is set forth, but as the unquestionable facts would have justified a positive instruction to the jury that the defendant was justified in taking the goods held by the plaintiffs during the life of the execution, the error of the charge, if there was any error, was wholly immaterial.
The only remaining question is presented by the exception to the charge as to the credibility of one of the witnesses. . Upon that subject the charge was that the jury were the judges of the credibility of the witnesses, and if they believed John Eoth had knowingly testified falsely in reference to any fact, he was not entitled to be believed in reference to any other fact testified to by him. To the last part of this charge there was. an exception. If this instruction were to be understood as forbidding the jury to give credit to any statements of the witness, although they might be satisfied of the truthfulness of some part of them, I should be inclined to doubt its correctness, although instructions going, as I understand them, to that extent, have sometimes been sustained. (Dunlop v. Patterson, 5 Cow. 248; The State v. Sim, 1 Dev. 508; Conrad v. Williams, 6 Hill, 447.) The object of all testimony is to establish the truth, and however corrupt the instrument of evidence may be, I am not aware of any legal rule which forbids a jury to give credit to such evidence (when the law allows it to be submitted to their consideration), so far as they may believe it to be truthful. I understand this question to have been settled by this court in the case of Dunn v. The People, lately decided, in favor of the right of the jury to determine whether any and what credit should be given to a witness under such circumstances. The charge on this subject, however, taken altogether, presents the question as fairly to the jury as the plaintiffs had any right to demand. If the witness had committed *493 perjury in Ms testimqny, he was certainly not “ entitled to be believed” upon any doubtful question, and the instruction on tMs subject should be construed in connection with the previous expression, that “the jury were the judges of the credibility of the witnesses.” Thus construed, the language excepted to must be regarded as the expression of the strong, and certainly very rational, opinion of the judge that the witness was utterly unworthy of credit, but still leaving the question of Ms credibility to the jury. In tMs way only can the different expressions of the- charge be reconciled.
The judgment of the supreme court should be affirmed.
All the other judges concurring, judgment affirmed.