## CHARLES E. CULVER ET AL.
### v.
## ISRAEL P. RUMSEY ET AL.

1. ATTACHMENT.—LEVY OF WRIT.—In order to secure a valid levy of a writ of attachment upon personal property, the property must be in view of the officer. Where grain in a car was at a station a few miles from Chicago, the service of a writ of attachment by the officer merely indorsing a levy upon the writ, without going where the grain was, is insufficient, and a subsequent attaching creditor who made a proper levy upon the grain is entitled to preference.

2. SALE.—The statute makes no provision for a private sale of property attached, and such a sale will have no effect upon the lien of junior attaching creditors.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed August 5, 1880.

Messrs. HATCH & ALDIS and Mr. A. W. BRICKWOOD for appellants; that the defendant must have removed or be in the act of removing his property for the purpose of defrauding his creditors, and the property must be overtaken and attached by the officer before a creditor is entitled to priority, cited Attachment Act, § 37; Pierson v. Robb, 3 Scam. 139; House v. Hamilton, 43 Ill. 185; Martin v. Dryden, 1 Gilm. 188.

A levy to be valid must be made in view of the property, and the officer must take possession: Minor v. Herriford, 25 Ill. 348; Havely v. Lowry, 30 Ill. 348; Davidson v. Waldron, 31 Ill. 121; Chittenden v. Rogers, 42 Ill. 105; Logsdan v. Spivey, 54 Ill. 106.

The levy upon property by the writ of attachment gives jurisdiction *in rem;* Hogan v. Lucas, 10 Pet. 401; Haywood v. Collins, 60 Ill. 329; Taylor v. Carroll, 20 How. 584; Martin v. Dryden, 1 Gilm. 188; Pearl v. Wellman, 3 Gilm.311; Bigelow v. Andreas, 31I ll. 300.

The court having acquired jurisdiction *in rem*, cannot be ousted of jurisdiction by process from another court: Taylor v. Carroll, 20 How. 584; Freeman v. Howe, 24 How. 454. Hogan v. Lucas, 10 Pet. 401.

It is not necessary that the person who appeals should be a party to the record, provided he has an interest in the question which may be affected by the judgment appealed from: Derrick v. Lamar Ins. Co. 74 Ill. 405; Rogers v. Dickey, 1 Gilm. 637.

A private sale of property attached is a fraud in law: Herman on Executions, § 177; Parys & Co. App. 41 Penn. 273; Harris v. Evans, 81 Ill. 420.

Messrs. Higgins, Furber & Cohran, for appellees.

Bailey, J. This is an appeal from an order of the Circuit Court of Cook county, awarding distribution of certain moneys in the hands of the sheriff of said county, arising from the sale of property seized under several writs of attachment against the estate of one August Martin. The facts presented by the record are as follows:

On the 12th day of August, 1879, and for some time prior thereto, said Martin was engaged in the business of buying grain, in Chicago, and shipping the same to Eastern cities by way of the Michigan Central and the Baltimore & Ohio Railroads. He had at that time become indebted to divers persons, among whom were Rumsey & Walker, the appellees. On the day above named, the Baltimore and Ohio R. R. Co. had in its

possession at Chicago, seven car-loads of Martin's wheat loaded ready for transportation, and had been ordered by Martin to transport the same to the city of Baltimore. Sometime in the forenoon of that day, Rumsey & Walker sent a messenger to the local agents of said company to inquire whether they had in their possession any grain belonging to Martin, and the facts being ascertained, it was arranged between Rumsey & Walker and one Rich, the local freight agent of the company, that two of said cars should be held, without notice to Martin, until an attachment could be levied thereon. In pursuance of this arrangement, said cars were held in Chicago until six o'clock P. M., when they were forwarded to Kingston, a station on said road, in Cook county, about twelve miles from Chicago. It appears that the two cars Rumsey & Walker desired to have held, were billed merely to Kingston, while the remaining five cars loaded with Martin's grain, were billed through to Baltimore.

In the afternoon of the 12th, an attachment against the estate of Martin was issued out of the Circuit Court of Cook county, at the suit of Rumsey & Walker, returnable to a term of said court, commencing on the third Monday of September following, and placed in the hands of one Cleveland, a deputy sheriff, to execute; and thereupon said Cleveland, in company with Rumsey, one of the appellees, went to the yards of said railroad company to levy on said grain, and arrived there a few minutes after the departure of the cars for Kingston. On learning that the cars had been sent off, the officer proposed to follow them to Kingston and levy on them there, but Rumsey directed him not to go, and gave him a guaranty against any loss which might result from his failure to make pursuit. The officer accepted the guaranty and forebore to follow the property, but indorsed on his writ a levy upon the grain in the two cars in question.

On the following morning, August 13th, the cars being still at Kingston, the officer, accompanied by Rumsey, called on Rich, the freight agent, at his office in Chicago, and served the writ on the Baltimore and Ohio R. R. Co., as garnishee, by delivering a copy thereof to said Rich as its agent. Rich

Culver v. Rumsey.

promised to return the cars to Chicago, and the officer, at the same time, assumed to appoint him custodian of the property levied on.

The cars remained at Kingston until the morning of August 14th, when they were returned to Chicago.    Rich did no act by way of taking them into his possession as custodian after their return, nor did he even see them, and no control seems to have been exercised over them by him other than that which he held as the freight agent of the railroad company.    It appears, however, that the deputy sheriff sent another custodian to meet them on their arrival.    He did not go with this custodian, but merely gave him the numbers of the cars, and told him to watch, and when they came, to jump on them and remain with them until they went into the elevator.    The two cars, on their arrival in Chicago, were, by direction of the deputy sheriff, taken to a warehouse, and the grain unloaded therefrom and placed in store, and warehouse receipts therefor taken in the name of the sheriff.    The wheat thus placed in store amounted to 976 bushels, which amount, however, included 158 bushels attached by the same officer in a car in possession of the Michigan Central R. R. Co.

On said 14th day of August, 1879, Henry Himmelgarn, one of the appellants, sued out of the Superior Court of Cook county a writ of attachment against the estate of said Martin, returnable to a term of said court, commencing on the first Monday in September following, and, as appears by the return endorsed thereon, said writ was, on the same day, levied upon said 976 bushels of wheat in store.    On the 16th day of August, 1879, Charles E. Culver and George N. Culver, two of the appellants, also sued out of the Superior Court a writ of attachment against the estate of said Martin, returnable to the same term; and on the same day said writ was also levied on said 976 bushels of wheat, as appears by the return thereon.    No attempt seems to have been made to contest the fact of the levy of these two writs, and it must therefore be assumed that levies were duly made thereunder as evidenced by the returns of the officer.

In all three of said suits judgment was afterwards rendered

for the plaintiffs, viz: in Rumsey et al v. Martin, September 17, 1879, for $1,373.12; in Culver et al v. Martin, September 18, 1879, for $838.72, and in Himmelgarn v. Martin, December 10, 1879, for $285.60. Special executions for the sale of the property attached were issued on all of said judgments to the sheriff of said county.

The evidence shows that sometime during the month of August, 1879, and before either of said judgments had been recovered, by some arrangement between the sheriff and said Rumsey, said warehouse receipts were delivered by the sheriff to Rumsey, and that the latter, the sheriff not being present, sold said wheat at private sale on the Board of Trade at the then market price, realizing therefor the sum of $760.34 and handed said proceeds to the sheriff.

The present controversy arose upon a motion made by Rumsey & Walker in the circuit court for an order on the sheriff to apply the money thus realized by the sale of said wheat to the satisfaction of their judgment. Himmelgarn and Culver & Co. were permitted by the circuit court to appear and contest said motion, but on final hearing it was held, that the levy made by the deputy sheriff under the attachment writ in favor of Rumsey & Walker was a valid and first levy upon the property attached, and that under the 37th section of the Attachment Act they were entitled to a priority over all other creditors of said Martin; also, that said Himmelgarn and Culver & Co. were not entitled to be heard on said motion, for the reason that their suits were brought in another court and at a different term; and for the further reason that their attachments were subsequent in point of time to that of Rumsey & Walker. The sheriff was accordingly ordered to apply the full sum of money in his hands to the satisfaction of the Rumsey & Walker judgment.

The first question to be considered is, whether there was any sufficient levy of the Rumsey & Walker attachment. The rule universally recognized by the courts of this country is, that in order to a valid levy of an execution or writ of attachment upon personal property, such property must be within view of the officer, and subject to his immediate disposition and con-

trol.   Among the numerous cases in other States where this rule is announced, are the following.   Haggerty v. Webber, 16 John. 287; Buckman v. Lansing, 3 Wend. 446; Ray v. Harcourt, 19 Id. 495; Van Wyck v. Pine, 2 Hill, 666; Lowry v. Coulter, 9 Penn St. 349; Duncan's Appeal, 37 Id. 500; Carey v. Bright, 58 Id. 70; Nichols v. Patten, 18 Me. 231; Odiorne v. Colley, 2 N. H. 66.

In Ray v. Harcourt, the sheriff, after levying his execution upon certain goods and chattels, requested the debtor to inform him of any other property in his possession subject to execution, and was informed that the debtor owned a quantity of fire-wood, part of which was a mile and a half, and the residue five miles distant, and also three canal boats which were lying about two miles and a half away.   The sheriff, thereupon, with the consent of the debtor, included the wood and boats in his levy, and subsequently advertised and sold them, and it was held that as to the wood and boats the levy was invalid as against subsequent writs of attachment.   So in Van Wyck v. Pine, an execution was levied upon five head of cattle, three of which were in sight, and the other two hidden from view by an intervening hill, and it was held that the levy upon the cattle not in view was void as against a subsequent purchaser from the debtor.   In Duncan's Appeal, a levy upon a planing machine and fixtures ten miles distant from the officer was held to be void.   In Huntington v. Blaisdell, 2 N. H. 317, the court in discussing the requisites of a valid attachment, say: "The whole articles must doubtless be within the power of the officer; that is, they must not be inaccessible to him by their distance, or by being locked up from his reach in an apartment not under his control; or by being covered up with other articles, or so in the custody of another person, that the officer cannot see and touch them."

Precisely the same doctrine has been repeatedly held by the Supreme Court of this State.   Thus, in Davidson v. Waldron, 31 Ill., 120, the court say: "We believe all courts hold a levy should be endorsed on the *fi. fa.*, and that the property should be in the view and under the control of the officer at the time he makes it, and he should, in a reasonable time after the levy

is made, take possession of the property." So it is also held that, in order to a valid levy, the officer must so deal with the property that, but for the protection of the execution, his acts would make him a trespasser. Minor v. Herriford, 25 Ill. 344; Havely v. Lowry, 30 Id. 446; Chittenden v. Rogers, 42 Id. 100; Logsdon v. Spivey, 54 Id. 104; Richardson v. Rardin, 88 Id. 124.

In view of these authorities, it cannot for a moment be pretended that any valid levy of the Rumsey & Walker attachment was made either on the 12th or 13th of August. On neither day was the property in view of the officer, but was twelve miles away. Under these circumstances no levy was possible, and the attachment writ did not become even an incipient lien on the grain. On either of these days it might have been levied upon by another writ, or Martin might have disposed of it by sale, entirely irrespective of the attachment. Nor was the position of the officer in any way bettered by his attempted appointment of a custodian, nor by his selecting as such custodian a person who, as agent of the railroad company, had actual control of the grain. The agent's possession was the possession of the company, and the officer, by appointing the agent as his custodian, could not avail himself of a possession which was held for the principal alone. Furthermore, until the officer had acquired title to the property by making a valid levy, he had no authority to appoint a custodian at all. Until he became entitled to possession himself, he could not commit the possession to another. The indorsement upon the writ was of no avail. A mere paper levy has no validity.

At the time of the return of the cars to Chicago on the morning of the 14th of August, the writ remained wholly unexecuted. The deputy sheriff had as yet acquired no authority over the grain, and the only way in which he could obtain a right to control it was by going to it, levying his writ, and taking it into his possession. This he did not do. True, he sent a custodian to take possession of it, but the custodian was no officer, and he went armed with no writ. The functions of a custodian do not arise until after a valid levy, and such levy had not been made. The acts of the custodian did not consti-

tute a levy, and there is an entire absence of evidence of any subsequent act on the part of the sheriff or his deputy, which can be held in law to constitute a service of the Rumsey & Walker writ. It being undisputed that the Himmelgarn attachment was levied on the 14th, and the Culver & Co. attachment on the 16th of August, they must, upon the facts appearing upon the record, be held to have been first served, and to be the first lien on the property attached. Of course, the foregoing remarks do not apply to the 158 bushels of wheat attached on the Michigan Central car, as no question is made as to the sufficiency of the levy of the Rumsey & Walker attachment, so far as that portion of the property attached is concerned.

If we are correct in the foregoing conclusions, it is manifest that the appellees obtained no priority of right to the proceeds of the grain taken from the Baltimore and Ohio cars by virtue of Sec. 37 of the attachment Act. That section provides that when the property is attached while the defendant is removing the same, or after the same has been removed from the county, and the same is overtaken and returned, the court may allow the creditor or creditors through whose diligence the same shall have been secured, a priority over other attachments or judgment creditors. Waiving the question as to whether the grain attached was being removed from the county within the meaning of this section, it is obvious that the priority can be given only where the property is actually attached by the creditor claiming such priority. No amount of diligence, where there is a failure to serve the attachment writ, can avail. As appellees' writ was not served, we can perceive no ground upon which the priority claimed can be based.

But even if it should be conceded that the appellees originally held a first lien upon the property attached, we think that by reason of their subsequent conduct in selling said property at private sale, they must be postponed to other creditors holding junior liens. As we have seen, the evidence shows that Rumsey, shortly after the levy, procured from the sheriff the warehouse receipts, giving the sheriff therefor an indemnifying bond, and went upon the board of trade and sold the grain at

private sale at the then market price, and rendered the proceeds of such sale to the sheriff. The statute makes no provision for selling property attached at private sale under any circumstances whatever. Such sale is in direct contravention of well-established principles of law, and is therefore wholly unauthorized. Only in one case is an officer permitted to sell property held on attachment in any manner, prior to the rendition of judgment, and the issuing of a special execution, and that is where the property is of a perishable nature and in danger of immediate waste and decay. In that case the sale can take place only on the sworn certificate of three freeholders, and at public auction.

To sell at private sale goods *in custodia legis* is not only a fraud in fact but a fraud in law, and if done in pursuance of an arrangement made by the execution creditor, he will be postponed to a junior writ. Herman on Ex. Sec. 177. The principle here stated is supported by the following authorities. Bingham v. Young, 10 Penn. St. 395; Keyser's Appeal, 13 Id. 409; Shinn v. Holmes, 25 Id. 145; Parys & Co.'s Appeal, 41 Id. 273; Harris v. Evans, 81 Ill. 419. In Keyser's appeal the court say: "Property taken on execution must be disposed of by public and not by private sale. To permit it to be sold otherwise would lead to fraud, and hence such an arrangement, although no actual fraud may be intended, is deemed fraudulent, and consequently postpones the execution creditor in favor of other executions, though subsequent in date."

It is possible that the appellees, in seeking to dispose of the property attached in the manner they did, supposed they were selling it at the best advantage, and were entirely free from any fraudulent intent, but the law looks with that degree of disapprobation upon such interference by creditors with the due execution of legal process, that the least penalty it can inflict is, to postpone them to any other creditors whose rights may have been unfavorably affected by their act.

The conclusion necessarily follows that the court below erred in ordering the sheriff to apply the moneys in his hands to the satisfaction of the Rumsey & Walker judgment. Whatever may have been their rights originally, they must now be

postponed to the other attaching creditors. But in our view, the Himmelgarn attachment was first served, and for that reason also has priority. The proceeds of the property attached must go to the satisfaction of the judgment obtained in that proceeding, and such other judgments as under the statute are entitled to pro rate with it in the distribution of such proceeds. By section 37 of the attachment act, it is provided that all judgments in attachment against the same defendant returnable at the same term, shall share *pro rata* according to the amount of the several judgments. The Himmelgarn attachment issued from the Superior Court, while the Rumsey & Walker writ issued from the Circuit Court. These two courts, although possessing the same jurisdiction, are, as courts, in contemplation of law, entirely distinct from each other. They are as much so as are the circuit courts of two different counties. It is impossible that both of these writs should be returnable to the same term. Had the terms of the two courts commenced on the same day they would have been different terms, because they would have been the terms of two different courts. But they in fact commenced on different days, one on the first, and the other on the third Monday of September. Nothing is clearer, then, than that, within the meaning of the Attachment Act, they must be deemed two separate terms. The Culver & Co. attachment, however, being returnable to the same term with the Himmelgarn writ, is entitled to share with it *pro rata*, and between these two the money should have been divided.

It is urged that the appellants, being suitors in the Superior Court, were not entitled to be heard upon the present motion, said motion being made in a proceeding in the Circuit Court. By section 39 of the Attachment Act, very ample powers are given to courts in making distribution of the proceeds of attached property. It is there provided that the court may at any time before the proceeds of any attached property have been paid over to the judgment creditors, order the whole or any part thereof to be paid into court, and may make any and all such orders concerning the same as it shall deem just. It would seem that under this section the court had power to hear

and adjudicate upon all conflicting claims to the proceeds, and to make distribution accordingly. By the motion the court was called upon to dispose of a fund to which the appellants were entitled, and we think that, not only by virtue of the statute, but upon principles of natural justice as well, the court had power to hear, and was bound to hear the appellants in the assertion of their rights. If the court had reached the conclusion, as we think it should have done, that no part of the fund belonged to its own suitors, probably the better practice would have been to deny the motion and refuse to make distribution altogether, leaving the court to whose suitors the money belonged to make the proper orders.

The judgment will be reversed and the cause remanded for further proceedings.

Judgment reversed.