[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 473 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 474 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 475 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 477 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 479 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 480 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 481 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 482 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 483 
The jury having found a verdict for the defendant, they must be deemed to have found the following facts as established by the evidence.
1. That the defendant levied on the goods in the plaintiffs' store on the 24th August, 1857, by virtue of the several executions then in his hands of which levy the plaintiffs had notice, and that such levy was endorsed on the executions on the same day.
2. That the acts done by the defendant in making the *Page 484 
levy were as follows: On the 24th of August he went to the plaintiffs' store, and into the rooms where the goods of the plaintiffs' were; saw them and exhibited to one of the plaintiffs the executions, and told him that he had levied on the said goods by virtue thereof.
3. That when the arrangement was entered into, that the defendant should take the check and notes in full of the executions, it was understood that the levy should continue in force, and that the inducement to such arrangement was to release the goods of Nelson Roth from the levy made by the sheriff of Oneida county; and that such check and notes were not taken in payment of said executions.
4. That John Roth refused to point out to the defendant's deputy the goods purchased by him after the levy and before the 24th October; and that the defendant, having no inventory, could not distinguish the goods levied on from the new goods purchased and put into the store.
5. That no goods were purchased after the 24th October which were taken by the defendant.
The only legal questions presented by the record for our consideration are:
1. Whether the acts of the defendant constitute a valid levy on the property of the plaintiffs.
2. Whether the charge to the jury that they might regard the levy of the 24th August as continued and covering the goods purchased subsequent thereto, and during the life of the executions, was erroneous.
3. Whether the court erred in charging the jury, that if they believed John Roth had knowingly testified falsely in reference to any fact, he was not entitled to be believed in reference to any other fact testified to by him.
(1.) Was there a valid levy? The acts necessary to constitute a valid levy on personal property ought not at this day to be in doubt. The question has been so often before the courts, and the rules laid down at a very early day have been so uniformly adhered to, that there would seem to be *Page 485 
no room for controversy or misunderstanding on the subject.
To constitute a valid levy, according to the court, the officer must enter on the premises where the goods are, and take possession of them, if that be practicable; if not, then he must openly and unequivocally assert his title to them by virtue of his executions. (Haggerty v. Wilber, 16 John. 287; Beekman
v. Lansing, 3 Wend. 446; Westervelt v. Pinckney,
14 id. 123; Green v. Burke, 23 id. 490; Camp v. Chamberlain, 5 Den. 198; Barker v. Binninger, 14 N.Y. 270.) It is proper, but not necessary, that the sheriff should make an inventory of the property.
It is not essential to the validity of the levy that he take actual possession of the goods, or that he remove them from the custody of the debtor. (Barker v. Binninger, cited supra;Ray v. Harcourt, 19 Wend. 495; Van Wyck v. Pine, 2 Hill, 666.)
Indeed, the test of a valid levy is whether enough has been done to subject the officer to an action of trespass, but for the protection of the execution. (See 3 Wend. 446; 23 Wend. and 5 Den. 198, cited supra.)
In this case the defendant went to the plaintiffs' store, saw the goods, asserted his right to them by virtue of his levy, in the hearing of one of the plaintiffs, and subsequently the fact that a levy had been made was endorsed on the executions. This brings the case precisely within the cases cited. The defendant did all that is required of an officer to do to perfect a lien on the debtor's goods. In Copley v. Rose (2 Coms. 115), it was held by this court that the defendant's saying that he had levied on the property of the plaintiff, showing the execution by virtue of which he acted, and insisting on the levy, was sufficient evidence that the defendant had exercised such dominion over the property as would make him a trespasser. By whatever standard we test the acts of the defendants, it seems to me that enough was done to constitute a valid levy on the goods. *Page 486 
(2.) As to the levy on the goods purchased and put into the store between the 24th of August and the 26th October. The learned judge told the jury that they might regard the levy of the 24th August as continued, and covering the goods purchased subsequent to the levy and during the life of the executions; such goods being in the same place, of the same general description as those levied upon, and being purchased to supply the place of goods sold by the debtor after the levy or making additions to the stock. The first branch of this instruction is not very clear, but taking the whole proposition together it would seem that the learned judge intended to say to the jury that inasmuch as the plaintiffs had sold part of the goods which had been levied upon, and other goods of the same general description had been purchased and put in the places from which the other goods had been taken, such substituted goods were liable on the execution, the plaintiffs neglecting, after request, to designate the goods on which the levy was made. The substituted goods became liable because the plaintiffs, having voluntarily mingled goods not liable to be sold with those that were liable, they could not maintain an action against the officer for selling such substituted goods. To permit an action to be maintained under such circumstances would be a fraud upon both the officer and the party whose process he holds. (Hart v.Ten Eyck, 2 Johns. Ch. R. 62, 108; Frost v. Willard, 9 Barb. 440.)
The charge, if intended, as I have no doubt it was, to convey the idea suggested was right. But if there was room for misapprehension as to the meaning of the judge, it was the duty of counsel to call for such qualification or explanation as would relieve the minds of the jury from any doubt in regard to it.
(3.) As to the charge that if the jury believed that John Roth had knowingly sworn falsely on the trial, he was not entitled to be believed in reference to any fact testified to *Page 487 
by him. The learned justice had reference, in this branch of his charge, to certain evidence which had been given on the trial, a brief statement of which is necessary to a correst understanding of the clause under consideration. Roth had sworn that he did not see the defendant at his store on the day of the levy; that the defendant did not show him the executions, nor claim to have levied; that on the evening of the levy there was no endorsement of the levy on the back of the executions, nor of the time they were received; that the sheriff accepted the check and notes in full of the executions, and did not claim to retain his levy; that he did not advise with Carr at the sale as to the price to be paid for goods. He denied that he said anything to Moore, a witness on the part of the defendant, about going away and not testifying; or that he had made him an offer of clothes, or any thing else, if he would do so; or that he had employed one Perry to see the witness Moore. In relation to all these matters, together with several others, the witness was contradicted by at least one, and, as to some of them, by two witnesses. And as to employing Perry to see Moore, he admitted it, in the course of his examination. It was to these contradictions the learned judge referred when he told the jury that if they found he had sworn knowingly false he was not entitled to belief in relation to any fact sworn to by him. Most, if not all, the matters as to which the witness was contradicted were material to the issues then being tried, and as to them deliberate false swearing was perjury. The charge, therefore, was that if the jury believed that John Roth committed wilful and corrupt perjury on that trial he was not entitled to credit as to any fact sworn to by him. It is not claimed that as to many of these material facts he was corroborated as to all matters resting on his own oath. The jury were required to ascertain the amount of credit to which the witness was entitled; and it was the province of the judge to give them such rules as would *Page 488 
aid them in arriving at a correct conclusion on that subject. The extent of credit to which the witness was entitled was submitted to the jury, whose province it was to pass upon it.
The case was properly disposed of and the judgment should therefore be affirmed.