THEODORE S. DEAN, APPELLANT, v. CHARLES S. CAMPBELL, RESPONDENT.

*Execution — what is a sufficient levy under — the execution binds goods from the time of its delivery to the sheriff, except as against purchasers in good faith — subsequent executions.*

An execution having been delivered to the sheriff, he went to the office of the defendant, a lawyer, and found him out; he then went to the defendant's farm, looked over certain articles of personal property and made a minute of them; he then returned to the defendant's office, and finding him still out, he looked over his library, opened the cases, handled the books and made a memorandum of them. On the next day he saw the defendant, showed him the execution and told him he had levied on the books.

*Held*, that the levy was sufficient as against a subsequent purchaser from the defendant.

That such levy continued in force for the benefit of executions, received by the same sheriff subsequently and up to the time that the execution under which the levy was made was paid.

Except as against a purchaser in good faith the goods of the debtor are bound from the time of the delivery of the execution to the sheriff.

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury.

*A. P. Butts*, for the appellant.

*Geo. H. Humphrey*, for the respondent.

TALCOTT, P. J. :

This is an appeal by the plaintiff from a judgment rendered against him, on a verdict at the Monroe Circuit, in 1879. The action was for wrongfully taking and detaining sundry articles of personal property. The defendant justified as sheriff of Monroe county by virtue of sundry executions against the property of Horace J. Thomas (which were, from time to time, during the years 1874 and 1875, delivered to him as such sheriff to be executed), and a levy by him on the property in question, as the property of the defendant in the executions. The property described in the complaint was sundry law books, the contents of a law library levied on as the property of Thomas, at his office in Brockport, Monroe county. One of the questions principally litigated was whether a levy had been made upon the contents of this law library on the 6th day of November, 1873. On that subject the deputy sheriff testified as follows : " I went to Thomas' office ; he was not in ; I went to the farm first, and looked over the property there was there, and made a minute of it and came back ; then I went to the office and he was not in ; I looked over his library and made a levy on that ; then I went back to work, and in the evening or next morning I saw Thomas ; I opened the cases and handled the books, and made a memorandum of them in writing ; when I saw him I showed him the execution, and asked him what he was going to do about it ; and he said it was all right, and he should pay it within sixty days ; I said I should have to make the levy ; he said the library was worth from $2,000 to $3,000, or from $3,000 to $4,000, and it would be good security ; I told him I had already made a levy." The memorandum of the levy was as follows :

" I have levied on the within described property on the farm of Horace J. Thomas, and in his possession. One bean drill, one horse rake, one roller, three cultivators, one bag of beans untouched, one bag bean straw, twenty-one bags of beans and a quantity threshed on floor, one straw stack, Mohawk Valley

reaper, one plough, one fanning mill, one lumber wagon, one wagon truck, one field of wheat, from eight to ten cases of books in his law library in his office, to satisfy execution the Bank of Monroe v. Horace J. Thomas.

"Brockport, *November* 6, 1873.

"CHARLES S. CAMPBELL, *Sheriff*.

"By Andrew Boyd, *Deputy Sheriff*."

In order to make a valid levy it is not necessary that the sheriff should take manual possession of the goods or remove them from the custody of the judgment debtor. It is enough if he assumes to control the property, gives notice to the debtor of the levy, and makes a minute thereof. The law-books were in the view and under the control of the officer, and the facts testified to by the deputy constituted a valid levy. (*Elias* v. *Farley*, 3 Keyes, 398; *Roth* v. *Wells*, 29 N. Y., 471.)

The execution of the Bank of Monroe was finally fully paid on the 21st day of February, 1874, but in the meantime sundry other executions against Thomas had been delivered to the sheriff for execution, and had been placed in the hands of Boyd, the deputy, at Brockport. And amongst others several of those upon which the law library was advertised for sale in May, 1874, at which time this suit was commenced to take from the sheriff the possession of the law library.

On the trial there was some controversy about the question whether a levy had been made on the law library on the execution in favor of the Bank of Monroe, and especially whether the fact of such levy had been communicated to Thomas. But this question was disposed of by the verdict of the jury on the question of fact distinctly presented to them in the form of the following question: "1. Was there a levy on the law library at the time the bill of sale was made?" To which the jury answered in the affirmative. There was no pretence of any other levy than that which was made on the 6th November, 1873. The deputy continued to attach his minute of the levy to the various subsequent executions as they came to his hands.

The levy of the 6th of November, 1873, continued and enured to the benefit of all the executions which subsequently came to the hands of the sheriff at any time before the execution of the Bank

of Monroe was fully paid, some executions also came to the hands of the sheriff subsequent to the 21st February, 1874, when the execution of the Bank of Monroe was fully paid.

On the 18th day of February, 1874, Horace J. Thomas, the judgment debtor, executed a bill of sale of all his right, title and interest of, in and to the law library in question, to Theodore S. Dean, the plaintiff in this suit, who then was, and for some time previously, had been the law partner of said Thomas.

The professed consideration of this bill of sale was $1,000, which it was claimed between the two that Thomas had drawn more than his share of the receipts of the firm.

The jury upon the evidence, which, without recapitulation, it is enough to say warranted the verdict, answered the specific question : " 2. Was the bill of sale made with intent to hinder, delay or defraud the creditors of Thomas ? " in the affirmative.

The levy, therefore, of the 6th of November, 1873, enured to the benefit of all the executions which came to the hands of the sheriff subsequent to that levy, who was, from the time of the levy, in legal contemplation in custody of the property, and there never was a moment of time, taking the several dates when the executions came to the hands of the sheriff, but when the executions held the property. (*Peck* v. *Tiffany*, 2 N. Y., 451; Crocker on Sheriffs, § 413.) By the Revised Statutes, the goods and chattels of a judgment debtor are bound only from the time of the delivery of an execution to the proper officer to be executed (2 R. S., 365, § 13), and the title of a purchaser in good faith cannot be divested by the mere delivery of an execution without a levy. (Id., 366, § 17.)

But, as the jury have found, the plaintiff was not a purchaser in good faith. So that without any reference to the actual levy, which, as we have seen was sufficient and continued till the 21st day of February, 1874, the sheriff could probably have held the goods, which, under the finding of the jury, as against creditors, were still the goods of Thomas, the judgment debtor. But the original levy of November 6th, with the subsequent executions continued the title in the sheriff, down to the time when the sale was advertised to take place, and he was, therefore, entitled to a verdict in the action.

In stating his defence, the defendant had particularly set out only one of the executions which had been delivered to him, viz.: that in favor of Thomas Cornes and Charles C. Cornes, setting out the substance of the execution, and the defendant afterwards averred in his answer, that prior to about the 15th of April, 1874, there were delivered to him eleven other executions, each of which had been duly issued out of the Supreme Court of the State of New York, reciting, as defendant is informed and believes truly, that judgment had been duly recovered in the said Supreme Court in favor of the plaintiffs therein named against said Horace J. Thomas, the defendant therein named for an amount exceeding fifty dollars as therein set forth, and stating the county where said judgment roll was filed, and the clerk's office in which said judgment was docketed, and the amount actually due thereon, and stating the command of the said executions in the ordinary form, but in his answer had omitted specifically to set forth the issuing of the said execution in favor of the said Bank of Monroe, which, as before said, had been paid prior to the commencement of the action against the sheriff. It seems that a case had been printed in this action previous to the said trial, and the plaintiff's attorney had made a stipulation, in writing, as follows : After entitling the action, " I agree to admit, on the trial of the above entitled action, the issuing of the executions set forth in the printed case in this action as therein stated and at the times therein mentioned to the sheriff of Monroe county, and that the same were in all respects regular and valid ; also ' Exhibit A,' in said case set forth, but subject to all objections, not formal, to the competency of said exhibit." Dated January 8, 1879. — ALEXANDER P. BUTTS, plaintiff's attorney.

As it is stated in the case, the plaintiff's counsel read from the printed case and offered in evidence the executions in said stipulation, being the said execution in favor of the Bank of Monroe and another in favor of George Upton against said Horace J. Thomas, which was objected to by the plaintiff's counsel as not alleged in the answer. " The defendant was therefore permitted to amend and did amend his answer by setting forth the issuing of said executions and the rendition of the judgments on which the same were founded. Objection overruled by the court and the same

were received in evidence and an exception taken by the plaintiff. We are at a loss to understand the point of this objection. But, assuming that the evidence was offered by the defendant's counsel, we do not see that it raised any material question. The executions were admitted by the stipulation which reserved no objection except to some paper in that former case which was known as " Exhibit A." What that paper was we are not advised, nor is it material.

The issuing of the executions to the sheriff, and that the same were in all respects regular and valid was admitted by the stipulation, and the objection seems to have been to the admission of the executions. The plaintiff did not claim that he was in any way misled by the proof of the executions, as it did not probably require any amendment to render them admissible after the stipulation. Sundry other executions were also offered and received in evidence, being, as we suppose, the executions which were alleged in the answer but not particularly set forth therein. To the admission of these the plaintiff made only a general objection, stating no grounds therefor. If the executions were not set forth with sufficient particularity the defect should have been corrected by an order to make the answer more definite.

There are no other exceptions in the case which seem to require any particular remark. Substantial justice does not seem to require a new trial of the action, as the jury has found that the levy was made as stated by the deputy sheriff, and especially as they have found that the title set up by the plaintiff was void as to creditors.

Judgment should be affirmed.

Present — Talcott, P. J., Smith and Hardin, JJ.

Judgment affirmed.