THE STATE, EDWARD G. DELANEY, PROSECUTOR, v.
MELICK MARTIN, DEFENDANT.

1. If a constable, under an execution issued out of a justice's court, takes actual possession of defendant's chattel, or places a keeper in possession, it will amount to a valid levy, although no inventory be taken.
2. An inventory, made as required by section 67 of the Justices' Court act, is necessary to support a levy resting upon a constructive seizure only.

On *certiorari.*

This brings up a judgment of the Union County Common Pleas rendered on an appeal from the District Court of Elizabeth.

Argued at June Term, 1888, before Justices SCUDDER and REED.

For the prosecutor, *J. W. & Joseph K. Field.*

For the defendant, *George T. Parrot.*

The opinion of the court was delivered by

REED, J.   The state of the case upon which the respective counsel agreed to argue this cause exhibits the following facts: On December 10th, 1885, one Flood obtained a judgment against Wright Merkle for $126.63.   Execution was issued upon this judgment and returned unsatisfied.   On December 31st, 1886, another execution was issued on the same judgment directed to Melick Martin, the plaintiff below, who was a constable.   On the same day, in the language of the state of the case, it was proved that Martin levied on a bay horse and a set of harness as the property of Frank Merkle, and advertised the same to be sold on January 10th, 1887. Martin left the horse in the possession of Mrs. Merkle, wife of the defendant, but before the day fixed for the sale some one had removed the horse to an unknown place.   It appears that Merkle had absconded on December 25th, 1886.   A

writ of attachment was sued out against him on January 3d, 1887, by Edward G. Delaney, the defendant below. Delaney gave the writ to a constable, showed him where the horse which had disappeared was, the horse was attached, sold, and purchased by Delaney for the amount of costs incurred in the suit, and was again sold by Delaney. Martin, who had been sued by the plaintiff in the action in which the levy was made, and had suffered a recovery for the amount of $48.50, brings this action against Delaney for the value of the horse, which is admittedly worth $100.

It thus appears that Martin rests his claim to the horse upon his special property in the same, arising from his levy. It is familiar law that a levy confers upon the officer a special property in the chattels. 1 *Waterman on Trespass* 528; *Lockwood* v. *Bull,* 1 *Cow.* 322; *Casher* v. *Peterson,* 1 *South.* 317; *Hamilton* v. *Hamilton,* 1 *Dutcher* 545; *Dean* v. *Thatcher,* 3 *Vroom* 470.

The counsel for the plaintiff below contends that there is no proof of such a valid levy as is essential to show a special property in the constable. The attention of the court is directed to section 67 of the Justices' Court act (*Rev., p.* 552), the provisions of which section require a constable to take an inventory in writing of such of the property as he means to levy upon, which inventory and levy, and the actual time of making the same, shall be annexed to the execution and signed by the said constable under his oath of office. The section further provides that this inventory shall at all times be received as evidence of the levy, and of the time of making the same, and that the property so levied upon shall be bound from the time of such levy, and not before.

There appears in the state of the case an inventory made by the constable. It sets out that by virtue of the execution he levied upon a bay horse and a single harness. To this there appears no signature or statement of the time when such inventory was taken. Below the inventory is a return of the constable to the writ of execution. He returns that a levy was made and endorsed on the execution, and that the horse

and harness thereupon and therein stated were duly advertised for sale, but the horse levied upon having been stolen, and the plaintiff refusing to furnish a bond of indemnity as demanded, I here return the said execution into court unsatisfied, on this 31st day of January, 1887. This return was signed by the constable. It thus appears that no inventory was signed by the constable, nor was the return to the execution signed by him until after the horse had been attached, on January 8th.

It seems clear, from an examination of the cases, that aside from the provisions contained in the sixty-seventh section of the Justices' Court act, a valid levy can be effected, although no inventory be made at the time. An inventory should be made of the property seized by the officer for his own protection and to sustain the *bona fides* of the transaction, as well as being a means of identification of the property in case of doubt or litigation concerning it, but it is not essential to the validity of the levy that an inventory be made. *Herman on Executions* 234; *Pugh* v. *Colloway,* 10 *Ohio St.* 488; *Roth* v. *Wells,* 29 *N. Y.* 471.

The question arises, how far, if at all, the provisions of the sixty-seventh section have changed this rule. The requirement that a constable shall make an inventory first appears in the Justices' Court act, as revised in 1818. *Pamph. L., p.* 75. Previous to this there appears to have been no statutory direction to the constable that he should make an inventory. *Paterson's Laws* 318.

At the time of the enactment of this direction there was a provision, first enacted in 1799, now found in the *Rev., p.* 1102, § 22, to the effect that if any sheriff or coroner, where the execution shall be by *fieri facias,* shall neglect to file a just and true inventory of the goods and chattels, lands and tenements so taken in execution, unless such sheriff shall return that he hath levied all the amount of the debt and damages and costs, shall be liable to the plaintiff in execution.

In the case of *Lloyd* v. *Wyckoff,* 6 *Halst.* 218, Justice Ford was of the opinion that this clause had induced the courts to adopt the doctrine of constructive seizure.

Indeed, the taking of an inventory seems to be the ground upon which a levy upon property left in the defendant's possession is supported, and the doctrine of constructive seizure is carried so far that if the defendant himself furnishes the inventory, with the assent of the plaintiff, the officer need not even have the goods in view. *Caldwell et al.* v. *Fifield et al.*, 4 *Zab.* 150, 160; *Dean* v. *Thatcher*, 3 *Vroom* 470.

But, as was held in the case of *Lloyd* v. *Wyckoff, supra,* while it is the duty of the sheriff to make the inventory, for the failure to perform which duty he can be amerced, yet it is not an essential act in perfecting a levy which would at common law have been otherwise good. The effect of the requirement contained in section 67 places a duty upon the constable to make an inventory. If loss results to the plaintiff by reason of his failure, the constable must respond in damages. The inventory, when signed in conformity with the terms of the statute, becomes evidence of the fact of the levy and the time when that levy was made. Besides this, it lays the foundation for a constructive seizure, which would not otherwise amount to a levy. In the absence of a seizure which at common law would have been a valid levy, the absence of such an inventory is fatal to the constable's control over the goods. But where he actually takes the goods into his own possession, or places a keeper in charge, I do not regard the failure to comply with the provisions of section 67 as invalidating the levy.

Now, while I do not regard these provisions as having more than a directory force, so far as the defendant or third parties are concerned, nevertheless, I think the failure of the constable to take the statutory steps in making and signing an inventory in the present case, is of the utmost importance to his cause. For while it may be conceded that levies, which at common law would have been valid, are not invalidated by want of an inventory, yet levies which, under our practice, have been recognized upon the ground of a constructive seizure, rest upon the fact that an inventory has been taken according to the statute. In this case there is no proof disclosed in the

state of the case that there was such control taken of the horse as would amount to a valid common law seizure under a *fieri facias.*

The counsel of the plaintiff says, in his brief, that the jury specially found that on December 31st, 1886, the constable did seize and take the horse into his actual possession. This nowhere appears in the state of the case sent up to the Common Pleas by the District Court.

The state of the case sets out that the plaintiff proved that he levied on one bay horse and one set of single harness as the property of the defendant on that day. But what he did does not appear. It further appears that after making the levy he left the property in the possession of the defendant's wife. Whether the officer took possession of the horse, or even had it in view, does not appear. As the unsigned inventory is not evidence, and as there is no other proof of such a seizure as would amount to a levy without an inventory, there appears in the case nothing to show that a special property rested in the officer by reason of any act he did under the writ.

This renders it unnecessary to consider any of the other questions raised. The judgment below is reversed.