Nelson v. Van Gazelle Valve Manufacturing Co.

WILLIAM H. NELSON

*v.*

VAN GAZELLE VALVE MANUFACTURING COMPANY.

1. In the absence of a voluntary acceptance by a defendant in execution of the position of bailee to the sheriff or constable holding the writ of the goods proposed to be levied upon, there can be no valid levy unless the officer shall take actual possession of the goods, or assert such dominion over them as will make him a trespasser in the absence of the writ.

2. A writ of execution from a justice's court does not bind the goods of the defendant until an actual or constructive levy be made. A bare inventory without levy is insufficient for that purpose.

3. A constable having in his hands an execution, issued by a justice of the peace, against the goods and chattels of an insolvent corporation, before decree of insolvency actually made, went to the factory of the defendant and attempted to levy upon the goods of the defendant, which were locked up within the warehouse, and, without effecting an entrance, made an incomplete inventory of them by a partial view through a small opening in a window.—*Held,* that the attempt to make a levy was a failure, and created no lien upon the goods as against the official receiver of this court.

On motion to attach for contempt, and for an injunction.

*Mr. John W. Wartman,* for the motion.

*Mr. Joseph Thompson, contra.*

Nelson *v.* Van Gazelle Valve Manufacturing Co.

PITNEY, V. C.

The object of the motion is to test the validity of the liens of certain executions, in the hands of a constable, upon certain chattels in the possession of the official receiver of the insolvent defendant corporation.

The bill alleging the insolvency, and praying a decree to that effect and the appointment of a receiver, was filed early in April, 1889, and an order to show cause was made upon it, returnable on the 1st day of May, and, upon that order, and on that day, the decree of insolvency was made and the receiver appointed. In the meantime, judgments were recovered in a justice's court against the insolvent corporation, and executions issued thereon and delivered to the constable, who attempted to make a levy by virtue of them. What he did was this: He went to the factory of the defendant corporation and found it closed and locked up, and he did not break in or otherwise gain access to the building, but succeeded in looking through a broken glass and getting a partial view of the chattels in question, which were within, and upon that view alone he made an incomplete inventory and what he claims to be a good levy.

But I think this attempt on the part of the constable did not result in a valid levy. The goods were in the building, access to them was barred by locked doors, and they were not within his actual reach or control, and he did not get such a view as to enable him to make an accurate and reliable inventory. He was warranted in law in breaking into the factory and making an actual seizure and adequate inventory, but he did not do so, and the validity of his levy must depend upon what he actually did, and not upon what he had the power and the right to do. At the time he went there to make the levy, the defendant company had suspended business for want of funds, and, by the approbation of its officers, the complainant had applied to the court for the proper statutory relief, and the defendant had shut up the factory purposely and with a view to protect the property from levy, so that it might be equally divided among the creditors of the corporation. This conduct on the part of the corporation

and its officers was in strict accordance with the letter and the policy of the act respecting corporations.

The constable, then, cannot successfully contend that he made what is called a constructive levy by the consent of the defendant corporation, leaving the goods in its possession as his bailee. What he did was without the consent and against the will of the owner of the goods, and the question is, whether, under the circumstances, the mere inventory, made by the officer, of goods not within his control or reach, and without the knowledge or assent of the defendant owner, will constitute a valid levy.

Our courts have gone farther than those of any other State in sustaining levies, but I find no case in our reports which seems to me to go far enough to validate the levy attempted to be made in this case. Chief-Justice Green reviews all the earlier cases in *Caldwell* v. *Fifield, 4 Zab. 150,* and justifies the rule deduced from them (which is confessedly a departure from the common law), on the ground that the delivery of an inventory by the defendant to the officer of goods in the former's possession renders him a bailee of the officer, and " the possession of the defendant the possession of the officer." Under such circumstances he holds that the levy cannot be invalidated or the constructive possession of the sheriff drawn into question by reason of his not seeing the goods at the time of making the inventory. He adds (*p. 161*): "It is unnecessary now to consider the question whether an inventory made by the officer of goods not within his view or under his control, without the knowledge or assent of the defendant, be a valid levy." Thus it appears that he expressly reserved the very question now under consideration.

The levy in *Dean* v. *Thatcher, 3 Vr. 470,* was upheld upon the principle laid down in *Caldwell* v. *Fifield,* the defendant having voluntarily furnished the inventory of the goods to the sheriff.

In some of the cases it is said, by the judge delivering the opinion, that the officer must have the goods " within his view *or* under his control," and it is argued that, by the use of that alternative expression, the court intended to lay down the canon, that a mere view of the goods, without control, is sufficient. But

Nelson *v.* Van Gazelle Valve Manufacturing Co.

I do not think that was the meaning of the learned judges. I do not think, for instance, that they meant to say that goods stored behind a strong iron grating or thick plate glass, which permitted a view, but effectually barred access, could be successfully levied upon, so as to create a special property in the constable, without gaining access to them by breaking through the barrier. Justice Drake, in *Lloyd* v. *Wyckoff, 6 Hal. 218,* hereafter to be cited, holds that the constable must both see and have the goods within his control.

I think that the true rule is, that, in the absence of the consent or agreement of the defendant, an officer, in order to make a valid levy on chattels, must do some act in relation to them, in the way of taking actual possession or asserting dominion over them, which, in the absence of the writ in his hands, would make him a trespasser. *Haggerty* v. *Wilber, 16 Johns. 287; Beekman* v. *Lansing, 3 Wend. 446; Connah* v. *Hale, 23 Wend. 462; Roth* v. *Wells, 29 N. Y. 471.*

Applying that test here, I think the levy fails as a levy, and is inefficient to vest a special property in the constable.

The sixty-seventh section of the Justices' Court act (*Rev. p. 552*), provides that the constable shall

"Take an inventory, in writing, of such and so much of the property of the defendant as he *means and intends* to levy upon ; which inventory and levy, and the actual time of making the same, shall be annexed to the said execution, and signed by the said constable, under his oath of office, and shall, at all times, be received as evidence of the levy and of the time of making the same, as contemplated by this act, *and that the property so levied upon shall be bound from the time of such levy and not before."*

It is argued by counsel for the execution creditors, from the language above quoted, that the goods are bound from the date of making an inventory, with an intention to levy upon and appropriate them to the satisfaction of the writ, and that the making of the inventory by the constable, without a levy, actual or constructive, corresponds, in this respect, with the delivery of the writ from a court of record to the sheriff, which our statute fixes as the time from which the goods of the defendant are

bound. *Rev. p. 392.* And it is further argued that, if the goods are once bound by the writ, an inchoate lien exists in favor of the execution creditor which this court is bound to respect and give effect to, although the constable never actually made such a levy as vested the special property in the goods in him and enabled him to maintain trover for them.

This argument is not without plausibility and even strength; and I am of the opinion that, if the legislature intended to make the mere inventory without levy, actual or constructive, the basis of the binding of the goods, then this court would be bound, upon the principles acted upon in *Richards* v. *Morris Canal Co.,*, *Spen. 136; James* v. *Burnet, Spen. 635,* and *Moses* v. *Thomas, 2 Dutch. 124, 570,* to recognize the inchoate lien and give the execution creditors relief accordingly. In the cases last cited the court recognized and enforced the inchoate lien of executions in the hands of sheriffs, although no levy had ever been made under them. By "inchoate lien," I mean that arising at common law as limited by our statute. *Rev. "Executions"* § *18 p. 392.*

The true construction of the sixty-seventh section of the Justices' Court act, above quoted, is not without difficulty; but, after the best consideration I have been able to give the subject, I am unable to adopt the construction claimed by the execution creditors. That section was enacted in 1818, and was in force upon the facts which gave rise to *Wintermute* v. *Hankinson, 1 Hal. 140,* and *Lloyd* v. *Wyckoff, 6 Hal. 218.*

The first of these cases is so meagrely reported that it is difficult to determine upon what precise grounds it was decided. The question was, whether the constable had acquired such a special property by his attempted levy as would maintain trover for the mare in controversy against a purchaser from the defendant in execution. The only fact that clearly appeared was, that the defendant in execution prevented the constable from taking the mare away by himself driving her away. It did not positively appear whether an inventory was made by the constable or not. Wall, in arguing for the constable, said (*1 Hal. 141*): "That a sheriff's execution was a lien upon the property from

the time it was delivered to the sheriff, and that the same principle must apply to executions in the hands of constables. By the common law there could be no levy without actually taking the property into possession; but that our statute altered this, and all that was meant by a levy, under our statute, was the making an inventory." Kirkpatrick, C. J., said (*p. 141*): "The mere delivery of the writ to the constable gives him no right to maintain trover. He must make an *inventory*, and then only is he considered as taking possession of the goods of the defendant, *and if they are not actually taken away by the constable, they are considered as bailed to the defendant for safe keeping.*"

Taking that case so far, it seems to me to hold simply, that an inventory was, under the statute, a necessary part of the levy, and not to hold that an inventory by itself, unaccompanied by the acts which without it would constitute an actual or constructive seizure, would constitute a levy; and what Ford, J., is reported to say (*p. 142*) agrees with this view. The levy was held insufficient.

The section in question was next under consideration in *Lloyd v. Wyckoff, 6 Hal. 218.* In that case, Justice Ford reviews the cases, and after citing *Casher v. Peterson, 1 South. 317; Newell v. Sibley, 1 South. 381; Cliver v. Applegate, 2 South. 479,* and *Wintermute v. Hankinson, 1 Hal. 140,* with some English cases, comes to this conclusion (*p. 222*): "Thus it appears to be a well-established principle in this court, that, if an officer receiving an execution makes in virtue of it a just and true inventory of the debtor's goods, and files it at the return of the writ, it amounts to a constructive seizure and possession of such goods, whereby they become appropriated to the satisfaction of such execution, and the officer acquires the property so as to maintain trespass or trover against any person taking it away. I am satisfied that this constructive seizure, growing out of our statute, has been properly founded upon it; and that no inconvenience can result from it to anybody. Certainly none is done to the judgment creditor, to whom the officer becomes answerable for a sum of money equal to the value of every article, though it should be consumed, wasted, lost or embezzled; and it would

be unjust if he could not protect himself against its being wrong-
fully taken from him. * * * Neither can it be injurious to
the debtor, *who may have the comfort and accommodation of the
goods till the time of sale, if the officer is willing to trust them to
him, either with or without security.*"

The first three cases last cited were decided upon facts occur-
ring before the passage of the act of 1818. In the first, *Casher
v. Peterson,* there was an actual levy, and the goods were left in
the possession of the defendant in execution as the constable's
bailee; and it was held that the officer had not lost his lien as
against a subsequent levy by another constable. *Newell* v. *Sibley,*
was a case of a sheriff's levy. In *Cliver* v. *Applegate,* the levy
was made by an inventory furnished by the defendant in exe-
cution, without the constable seeing the goods, they being left
in the defendant's custody as bailee of the officer. The levy
was held good, although the judgment below in favor of the
constable was reversed on other grounds.

Thus it will be seen that if Justice Ford, in the part of his
opinion above quoted, intended to lay down the proposition that,
under the thirty-first section of the act of 1818, which is the
sixty-seventh section of the present act, a valid levy could be
made by a mere inventory, without actual levy, or such conduct
on the part of the defendant in execution as rendered him a
bailee of the constable, he is not sustained in it by the authori-
ties he cites in support of it. But I do not think the learned
justice so intended. I think it appears, from the latter part of
the clause above quoted, that he had in mind an actual inventory
and a constructive levy arising out of the bailing of the goods
to the defendant in execution with his consent.

It appears from the facts of the case, that the question in-
volved was, whether a levy was good without an inventory and
without either an actual seizure and the removal of the goods,
or a constructive seizure by bailment to the defendant; and
these were the questions discussed by Justice Ford. Justice
Drake discusses the section in question more closely, and after
showing that the word "levy" was used in the various sections
of the act sometimes in its original sense of an actual making

the money out of the property, and sometimes in its secondary sense of seizing the property preliminary to making the money, uses this language (*p. 232*): "The thirty-first section takes away (if it ever existed) from an execution issuing out of a justice's court, all *lien* previous to the levy, and directs an inventory to be taken of 'so much of the property of the defendant *as he intends* to levy on, which inventory and levy' &c. There is some obscurity in this section. But it cannot be that the words '*intends* to levy on' refer to a future time. This would be absurd. And all the subsequent directions of the section shew that the levy and taking of the inventory * * * *under proper circumstances, and with the view to the execution of the writ*, may constitute the levy. The statute makes the inventory *essential*, but it does not mean to dispense with any other act or circumstance. When the constable prefixes or adds to it such words as show that *he has made a levy*, by virtue of the writ, upon the goods there inventoried, and the actual time of making the same, and signs it, and annexes it to the execution, it 'shall at all times be received as evidence of the levy, and of the time of making the same,' even before the return of the writ. But this evidence will only be *prima facie;* and if the inventory and levy were not taken *under proper circumstances*, they will be void. The legislature never intended to destroy the wholesome requirements of the laws on the subject of levies in justices' courts more than any other. And when they attach so much importance to the inventory, they mean that the officer should make it *with all those means of knowledge which are necessary to enable him to make it correctly.*"

After discussing the earlier cases, he concludes (*p. 236*): "From what has been said, the requisites to a good levy, in all ordinary cases, may be safely laid down to be, first, that the officer should *see* the goods, and have them *in his power;* and secondly, that he should, in addition to this, do some act demonstrating his intention, from that time forward, to appropriate them in obedience to the commands of his writ. It is impossible to describe what these acts, under all circumstances, should be. Some, however, may be mentioned. * * * I do not

consider an inventory to be required by the act of 1788, or *dispensed with* in a particular case, for any other purposes than those mentioned in the act. It is made *necessary* by the thirty-first section of the Small Cause act, in the execution of writs from justices' courts. It is to be recommended in all cases. * * * He must *see* the property and have it *under his control,* and know what he has thus actually or constructively taken, in order to perfect his levy. An inventory taken without *competent knowledge* is liable to almost all the objections against a general levy."

Guided by these lights, I conclude that the object and effect of the thirty-first section of the act of 1818, now the sixty-seventh section of the present act, was to make an inventory essential to a valid levy when the property was left in the defendant's hands as bailee, but not to render it of itself sufficient to constitute such levy, or to create a lien on the goods, such as results from the delivery of a writ from a court of record to a sheriff; that an essential part of a levy is an actual or constructive seizure of the goods, which constructive seizure may be effected by the owner becoming voluntarily the bailee of the officer; that the goods are not bound by a constable's execution until such a levy is made; that, in this case, no complete or accurate inventory was or could be made, and no actual or constructive levy, and that it follows that the goods attempted to be levied upon are not bound by the writs, and the execution creditors have no standing in this court.

An order enjoining the constable from proceeding with the executions will be made, but without costs as against the constable.

There will be no attachment for contempt.