BIRBECK INVESTMENT, SAVINGS AND LOAN COMPANY
OF AMERICA

*v.*

CLARA B. GARDNER et al.

1. A sheriff continued a foreclosure sale because of an alleged insufficient bid, and, at the adjourned sale, bid in behalf of a third person a much larger amount, and the property was sold to the bidder at the first sale at a greatly increased price.—*Held*, that though the increase of the price would increase the fee of the sheriff, it was his duty to adjourn the sale—*Gen. Stat. p. 2111* providing for confirmation of foreclosure sales only where the court is satisfied that the property has been sold at the best price—and the sheriff is entitled to fees for the adjournment as based on the increased price.

2. Where a sheriff sells land in foreclosure, he is not entitled to $3.50, given by *Gen. Stat. p. 1456*, for serving a writ against lands and making inventory and return.

*Mr. Charles B. Hughes*, for the motion.

*Mr. Joseph N. Tuttle, contra.*

PITNEY, V. C.

This is a motion to retax the sheriff's fees on a foreclosure sale. The principal contest was over the amount of commissions. The execution was for over $9,000.

When the premises were first exposed for sale the solicitor of the complainant bid $2,000, and no one bidding any more, the deputy sheriff conducting the sale stated, in a low tone to the bidder, that the premises were worth a good deal more, and that he must bid more or that he would adjourn the sale for a better bid. The solicitor protested, declining to bid more; the sheriff, who was near by, was called in, heard what the solicitor had to say, and adjourned the sale. On the adjourned day the solicitor made the same bid, and the deputy increased the bid, and when asked the name of the bidder gave the name of Stephen Crilly,

of New York.   The solicitor charged him with fictitious bid-
ding in order to increase his fees; the deputy persisted, bid the
property up against the solicitor to $5,000, whereupon the solici-
tor bid $100 more—$5,100—and it was struck off to the com-
plainant.

The sheriff has charged commissions on $5,100.   The solicitor
claims that the property should have been struck off to him on
the first day, and that the bidding by the deputy for Mr. Crilly
was a mere device to increase the amount of the sheriff's fees.

The affidavits on the part of the sheriff show the property to
be worth much more than $5,000, and that he was authorized
by Mr. Crilly to bid that sum for it.   There is no proof that
the sheriff hunted up Mr. Crilly and induced him to bid, or
that he was a mere irresponsible figurehead for the sheriff.   He
swears that he was acquainted with the property and authorized
the bid.

The fact that the solicitor was willing to bid $5,100 rather
than let the premises go, and the fact that the sheriff, if he did
so, was able to get a responsible party to make the bid of $5,000,
indicate that the property was of sufficient value to make it
bring that much in cash at sheriff's sale, for, under the circum-
stances, the sheriff would have been personally responsible for
Crilly's bid if the property had been struck off to him.

And that brings us face to face with the statute of March
12th, 1880 (*Gen. Stat. p. 2111*), which provides for confirma-
tion of sales by sheriffs under foreclosure proceedings, and that
the sale

"shall not be confirmed unless the court is satisfied, by evidence, that the
property has been sold at the highest and best price that the same would then
bring in cash, and such evidence may be in the form of affidavits."

It has been held that this act was intended to apply not only
to cases where there was likely to be a decree for deficiency, but
to all sales.   *Mutual Benefit Life Insurance Co.* v. *Gould, 7
Stew. Eq. 417; Delaware, Lackawanna and Western Railroad
Co.* v. *Scranton, 7 Stew. Eq. 429; Trust Company* v. *Jenkins,*

*13 Stew. Eq. 451; Bethlehem Iron Co.* v. *Philadelphia and Seashore Railway Co., 4 Dick. Ch. Rep. 356.*

I think it may be safely said that the policy of the law is that every encouragement be given to sheriffs and other officers to obtain the largest price they can for property sold by them. In the conduct of the sale, with that object in view, sheriffs are not altogether subject to the control and direction of the plaintiff, or complainant, in the writ. The control which that party has over the writ does not extend so far as to enable him to compel the sheriff to sacrifice property at a sale. Other persons may be, and usually are, interested—infants, lunatics and others—who, by reason of absence or other circumstances, are unable to look after their interests. If, then, the sheriff or other officer having the responsibility of conducting a sale under a judicial writ or order, sees that a sacrifice is about to be made, which may be avoided by an adjournment, it seems to me that, in the absence of other controlling circumstances, it is not only his right but his duty to adjourn the sale. How else can he make the usual affidavit that the property brought the highest and best price that it would bring in cash?

This right and duty of the sheriff are not affected by the circumstance that an increase of the price will increase his fees. It may be that one object in making sheriff's fees in such cases measurably dependent upon the amount realized from the sale was to incite the officer's diligence and care in the direction of procuring the best prices attainable.

If, then, the evidence in this case warranted the conclusion that the sheriff induced Mr. Crilly to bid, I am far from sure that it would affect the result.

I think the charge for adjournment and commissions must stand.

The only other objection is to the item of $3.50 for levy and return. In this case there was no levy or inventory to be made, and none was made.

The writ was a special *fieri facias* to sell certain lands therein described, and certain shares of stock therein specified, held by the complainant as collateral, and in its possession. The certifi-

cate of stock was handed to the sheriff or put within his reach by the solicitor, for the purpose of sale and delivery. In fact, there was, and is, in such cases, no necessity for the issuance of a writ of *fieri facias*. All sales by order of the court of chancery of specific property already within the reach of the court, may be made by a master, as in partition cases, by a mere order or decree of sale.

The word "levy," in our legal nomenclature, imports an actual seizure by manual caption of goods and chattels, accompanied by an inventory of the same and in the case of land, a description thereof and no more. It is true that the word in its broader sense may include the whole process of making the money mentioned in the writ by seizure of the goods, making a description of lands, advertising them for sale, selling them, and collecting the money. But in practice it has been distinguished from an advertisement and sale, and has been confined to the actual seizure of the property either by taking manual possession or by statutory proceeding, or, in case of land, making a description thereof where the property is incapable of manual caption. This abundantly appears by a perusal of the various judicial deliverances upon the subject of proceedings under execution, as found in the reported cases which are collected in *1 Stew. Dig. 531, 532, 534; Sup. 300, 301.* And see *Nelson* v. *Van Gazelle Manufacturing Co., 18 Stew. Eq. 594; Delaney* v. *Martin, 22 Vr. 148.*

And in the Fee act (*Gen. Stat. pp. 1447, 1448*), the sheriff is allowed a fee for "serving" a writ of execution, another for "advertising," and still another for "selling" under it. By the service here mentioned is meant the levy or seizure and making the inventory of the goods and lands seized, as distinguished from the sale of the same. This distinction has run through all the acts, from the act of June 13th, 1799. *Rev. of 1816 p. 488; Rev. of 1846 p. 464; Rev. of 1877 p. 405.*

But the counsel for the sheriff relies upon the act of April 18th, 1891 (*Gen. Stat. p. 1456*), by which the sheriff is allowed $3.50 "for serving every writ against goods or lands and making an inventory and return."

The " serving " here provided for is the same " serving " provided for in the original act before quoted; and the fee is made $3.50 instead of $1, presumably on account of the smallness of that sum for making a seizure and an inventory. It certainly does not cover the advertisement and sale, for he is allowed for each of those separately and has charged for them in this case.

I do not think that the act just cited enlarges the scope of the old act, but simply increases the amount of the charge, so that the charge is, in my judgment, allowed for a seizure and inventory. None such were made in this case, and therefore the charge of $3.50 must be stricken out; but as the complainant failed in his principal contention, it will be without costs.