WILLIAM C. STALLKNECHT, Appellant, *v.* GILBERT APPLIANCE CORPORATION, Respondent.

County Court, Monroe County, September 1, 1932.

*Robert S. Garson*, for the appellant.

*Burns & Burns* [*Robert Wendt* of counsel], for the respondent.

LYNN, J. In November, 1931, William H. Falls was occupying the premises at 635 South avenue, Rochester, as tenant of the owner of said premises, Anna N. Gaenzler. On the twenty-first of said month the respondent sold to the said Falls, under a conditional sales contract, a Frigidaire unit consisting of a compressor, set up on two ordinary cement building blocks laid on the dirt floor of the cellar, and coils upstairs in the icebox and meat counter, connected with the compressor by copper tubing, which could be disconnected without breaking the tubing, by unscrewing the coupling.

The conditional sales contract was filed in the Monroe county clerk's office, and to it was attached a statement to the effect that the unit would be installed upon the premises 635 South avenue. The vendee in the contract, William H. Falls, resided at that time in the town of Ogden, Monroe county, and neither the contract nor a copy thereof was filed in the office of the town clerk of the town of Ogden. Falls became in default under the contract on the 21st day of January, 1932, and thereafter continued in default.

Sometime prior to January 21, 1932, judgments had been taken

against said Falls, and executions thereunder were on said twenty-first day of January delivered to the sheriff of Monroe county. On that day the appellant, through his deputy, went to the said store at 635 South avenue, told the party in charge that he was going to close up the business, took the cash from the cash drawer, listed on the execution as levied upon the merchandise and equipment in the store, including " an ice machine," and then locked the door.

The deputy later sold the perishable goods and some other things levied upon, but did not sell the ice machine, for reasons which are not explained, nor some other fixtures which he understood were covered by a conditional sales contract held by the Myer Smith Company.

The deputy then apparently gave the key to the store to Myer Smith, probably for the purpose of his removal of the fixtures belonging to his company, and on the second day of February the appellant, through another of his deputies, reobtained the key and returned to the store and placed a levy sticker upon the so-called ice machine — that is, upon the compressor in the cellar — locked the door and returned the key to Myer Smith, at the same time noting on the execution that he had that day levied upon the ice machine. The deputy sheriff attempted to explain the reason for returning the key to Myer Smith, but this evidence was excluded.

On the 8th day of February, 1932, and before any sale by the sheriff under his execution, the respondent retook the said ice machine under its conditional sales contract.

This Frigidaire unit, or ice machine, remained personal property after its installation in the premises 635 South avenue. (*Madfes* v. *Beverly Development Corporation*, 251 N. Y. 12.) There was really no attachment of this machine to the real property. Because one part of it was on one floor and one on the other, it was necessary to bore a hole for the connecting pipe, but that was only to connect two parts of the same machine. It was in no way connected with the building. The part of the machine in the cellar was merely laid upon two ordinary building blocks which were in turn laid upon the earthen floor of the cellar, the blocks merely being used because there was no concrete cellar bottom.

The property being personalty, the place for filing the conditional sales contract was in the town clerk's office in the town of Ogden where the vendee, William H. Falls, resided at the time of the making of the contract. (Pers. Prop. Law, § 66, added by Laws of 1922, chap. 642, as amd. by Laws of 1930, chap. 874.) The contract, not having been filed as required by section 66 of the Personal Property Law, was void as to any creditor acquiring a lien by levy

upon said property. (Pers. Prop. Law, § 65, added by Laws of 1922, chap. 642.)

It, therefore, becomes necessary to determine whether the steps taken by the appellant through his deputies amounted to a levy. The fact that the execution was in his hands would not be sufficient without an actual levy. (*Baker* v. *Hull*, 250 N. Y. 484.) There is no arbitrary form which has to be followed in making a valid levy under an execution. There must, of course, be an intention to levy upon the property and some overt act done which indicates that intention. The headnote in the case of *Roth* v. *Wells* (29 N. Y. 471) is as follows: " To constitute a valid levy, * * * the officer must enter on the premises where the goods are, and take possession of them, if that be practicable; if not then he must openly and unequivocally assert his title to them by virtue of his executions. * * * It is not essential to the validity of the levy that he take actual possession of the goods, or that he remove them from the custody of the debtor. * * * the test of a valid levy is whether enough has been done to subject the officer to an action of trespass, but for the protection of the execution."

The rule laid down in that case has not been changed or modified by the Legislature or the courts, and it seems to me that what was done in this case fulfilled the requirements above stated. Surely when the deputy sheriff locked the door, he was a trespasser but for the execution, and while he did not promptly sell all that he had levied upon, there is nothing to indicate that he abandoned the ice machine, but, if he did, he relevied upon it on the second day of February, which was six days before it was retaken by the respondent. That levy was made by placing on the article levied upon what is called a " levy sticker," and, while the contents of this sticker do not appear in the evidence, it is doubtless permissible to assume that it was something giving notice of the levy. This, coupled with the indorsement on the execution by the deputy to the effect that the levy had been made, would seem to be amply sufficient within the rule above laid down.

In addition, the premises were again locked, and, while the key left the possession of the sheriff, it is obvious that that was a mere convenience and cannot be construed into a recall of the levy which had just been made. There is something in the evidence concerning the back door not having been locked at any time, but I find no decision which makes this important. The fact remains that it was the intention of the sheriff to make levy upon all this property and that enough was done to give evidence of that fact to the world. That there was deliberation about the selling of goods which might not be the proper subject of levy, ought not be held to affect the validity

of the levy. Strong-arm methods ought never to be required in the orderly administration of justice.

The judgment must be reversed and plaintiff awarded judgment against the defendant. There are two stipulations in the case, the first of which was made before the trial and puts a valuation on this property of $400. On the trial it seems to have been agreed that only a part of the unit was really levied upon, and on page 19 of the minutes appears a stipulation apparently reducing this $400 to the sum of $160. This last stipulation was apparently intended to be the measure of damages upon failure to deliver possession of the chattel. The judgment should follow that stipulation, with thirty dollars costs of this appeal to the appellant.